**In re Mary Lynn MABRAY, Relator.**

No. 01–09–01099–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 2010.

Reconsideration En Banc Overruled
Oct. 14, 2010.

Bruce K. Thomas, Dallas, TX, for Appellant.

Brenda Keen, Houston, TX, for Appellee.

Panel consists of Justices KEYES, HANKS, and HIGLEY.

## OPINION [1]

LAURA CARTER HIGLEY, Justice.

By a petition for writ of mandamus, relator, Mary Lynn Mabray, challenges the trial court's October 30, 2009 order denying her motion to disqualify Brenda Keen, counsel from representing her husband, Gary Allen Mabray, and her motion to revoke consent to arbitration. Mary contends that Keen's representation of her husband, and the arbitration agreement itself, violate Texas public policy. We disagree. Accordingly, we deny mandamus relief.

### Background

After 35 years of marriage, Mary discovered her husband Gary's alleged ongoing infidelity and sought a divorce. She retained Harry L. Tindall, and filed an action for divorce in September 2008. Gary re-

---

1. The underlying case is *In the Matter of the Marriage of Mary Lynn Mabray and Gary Allen Mabray*, No. 2008–53714, in the 311th Judicial District Court of Harris County, Texas, the Hon. Doug Warne, presiding.

tained Brenda Keen and filed an answer in October 2008.

On February 12, 2009, the parties and their counsel signed a four page document titled "Cooperative Law Dispute Resolution Agreement" ("the Agreement"). The Agreement states that the parties agreed to "effectively and honestly communicate with each other with the goal of efficiently and economically settling the terms of the dissolution of the marriage."

The Agreement forbids formal discovery unless agreed upon, relying instead on "good faith" informal discovery. Specifically, the Agreement provides:

No formal discovery procedure will be used unless specifically agreed to in advance. The parties will be required to sign a sworn inventory and appraisement if requested by the other party.

We acknowledge that, by using informal discovery, we are giving up certain investigative procedures and methods that would be available to us in the litigation process. We give up these measures with the specific understanding that the parties will make to each other a complete and accurate disclosure of all assets, income, debts, and other information necessary for us to reach a fair settlement. Participation in this process is based on the assumptions that we have acted in good faith and that the parties have provided complete and accurate information to the best of their ability.

Neither party requested a sworn inventory and appraisement.

The Agreement also provides that, if the divorce was not settled by April 30, 2009, the cooperative law process would cease and the parties agreed to submit the divorce to arbitration. Specifically, the Agreement provides:

The parties further agree that if this case has not been settled by negotiation and an Agreed Final Decree of Divorce has not been submitted to and signed by the Court before April 30, 2009 then this matter will be submitted to binding arbitration pursuant to the Joint Motion for Referral to Arbitration and Agreed Order of Referral to Arbitration attached hereto and made a part hereof.

The parties agree to be bound by this agreement, the Texas alternative Dispute Resolution Procedures Act (chapter 154 of the Texas Civil Practice and Remedies Code), the Texas General Arbitration Law (chapter 171 of the Texas Civil Practice and Remedies Code), Section 6.601, Texas Family code, and the laws of the state of Texas.

The parties, through their counsel signed a "Joint Motion for Referral to Arbitration" that was filed on March 11, 2009. The motion asked the trial court to submit their case to arbitration on or before July 3, 2009, if the parties had not resolved their case by agreement by April 30, 2009, and also asked that a certain person, agreed to by the parties, be appointed as the arbitrator. The trial court signed the requested order on March 18, 2009.

An agreed final decree of divorce was not submitted to the court by April 30, 2009. Accordingly, the cooperative law process ceased by its own terms.

In May, the person appointed as the arbitrator discovered a conflict that prevented him from presiding over the arbitration proceedings. The parties subsequently agreed to a new person to act as arbitrator and submitted an agreed order to the trial court on July 2, 2009, representing "as evidenced by the signatures of their respective attorneys of record" that (1) they wanted a new arbitrator appointed; (2) the case was not resolved by agree-

ment of the parties before April 30, 2009; and (3) they had agreed to amend the Agreement to provide that the case would be submitted to binding arbitration on or before August 31, 2009.[2] The trial court signed the order on August 12, 2009, ordering the parties to submit their dispute for arbitration before the newly-designated arbitrator on August 26, 2009—a date agreed to by the parties.

After the parties submitted this agreed order to the trial court, but before the trial court signed the order, Mary submitted a motion to substitute counsel. The order granting the motion to substitute counsel was signed by the trial court on August 7, 2009. Accordingly, Mary's new counsel, Stephen Shoultz, was appointed five days before the agreed order was signed.

On August 14, 2009, two days after the agreed order had been signed, Mary filed a motion to revoke her consent to arbitration. Specifically, she stated that Tindall had "forced" her to sign the Agreement while she was "emotionally distraught" over the divorce and under the influence of tranquilizers.

Six days after that, she filed a motion to disqualify Keen, Gary's counsel. Mary asserted that the Agreement sought to "contract around" Texas's collaborative law statute, section 6.603 of the Texas Family Code. Because Keen would be unable to continue to represent Gary in litigation under a collaborative law agreement once the collaborative process had failed, Mary contended that Keen must also be disqualified after the cooperative process failed.

Gary moved to enforce the Agreement and to compel arbitration, noting that the Texas collaborative law statute is inapplicable to cooperative law agreements.

At the hearing, Mary contended that Gary breached the cooperative law agreement by concealing assets, but Gary's counsel asserted that the arbitrator, not the trial court, should determine whether he breached the Agreement.[3] The trial court agreed with Gary's counsel, noting that the parties had eschewed formal, sworn discovery unless made otherwise by agreement. The trial court granted Gary's motion, concluding that "[i]f they want to enter into an agreement which, apparently, they both signed, and call it Cooperative Law Agreement ... I don't think there's any assumption that they can't do that."

On October 30, 2009, the trial court signed an order compelling arbitration, which provides, in part:

> This case was not resolved by agreement of the parties before April 30, 2009, and the parties are required to arbitrate their divorce action pursuant to the Cooperative Law Dispute Resolution Agreement signed by the parties on February 12, 2009. . . .
>
> It is ordered that Mary Lynn Mabray's Motion to Disqualify Brenda Keen is hereby denied.
>
> It is ordered that Mary Lynn Mabray's First Amended Motion to Revoke Consent to Arbitration and Request for Jury Trial is hereby denied.

The trial court filed findings of fact and conclusions of law. Subsequently, the trial court filed additional findings of fact and conclusions of law that state:

> 1. Brenda Keen is not required to withdraw as attorney for Gary Allen

---

2. The agreed order expressly states that it was signed by permission on behalf of Mary. Nothing in the record challenges the accuracy of the statement.

3. Gary did not attend the hearing.

Mabray after the parties failed to reach a settlement under the Cooperative Law Dispute Resolution Agreement.

2. The Cooperative Law Dispute Resolution Agreement is not governed by Texas Family Code § 6.603.

3. The Cooperative Law Dispute Resolution Agreement does not violate Texas Public Policy.

4. Brenda Keen is not disqualified to represent Gary Allen Mabray.

In two points of error in her petition for writ of mandamus, Mary argues that the trial court abused its discretion in failing to disqualify Keen and in ordering the parties to submit to arbitration. For her first point of error, Mary does not contend that Keen's representation of Gary violates the Texas Disciplinary Rules of Professional Conduct. *See In re Cerberus Capital Mgmt., L.P.,* 164 S.W.3d 379, 382 (Tex. 2005) (holding disciplinary rules can provide guidelines relevant to a disqualification determination). Moreover, she does not assert that she divulged confidential information to Keen that could be used inappropriately in litigation. Nor does she state that she and Keen engaged in an attorney-client relationship. Instead, she contends generally that Keen must be disqualified because the collaborative law statute controls the agreement and because cooperative law agreements violate public policy in Texas.

In his response to the petition for writ of mandamus, Gary argues that Mary's petition is barred by laches.

## Mandamus Review

Mandamus relief is available only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *Walker v. Packer,* 827 S.W.2d 833, 839 (Tex.1992). A clear abuse of discretion occurs when a trial court "reaches a deci-

sion so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Johnson v. Fourth Court of Appeals,* 700 S.W.2d 916, 917 (Tex.1985) (orig. proceeding). The reviewing court may not substitute its judgment for that of the trial court when reviewing factual issues. *Walker,* 827 S.W.2d at 839–40. Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless the decision is shown to be arbitrary and unreasonable. *Id.* at 840. When a trial court improperly denies a motion to disqualify opposing counsel, there is no adequate remedy by appeal and mandamus relief is appropriate. *In re Basco,* 221 S.W.3d 637, 639 (Tex.2007). Mandamus review may be appropriate for an order granting a motion to compel arbitration when it is necessary "to preserve important substantive and procedural rights from impairment or loss." *In re Gulf Exploration, LLC,* 289 S.W.3d 836, 843 (Tex.2009).

## Laches

As a threshold issue, Gary contends that Mary's petition for writ of mandamus is barred by laches. Although mandamus is a legal remedy, it is largely controlled by equitable principles. *Rivercenter Assocs. v. Rivera,* 858 S.W.2d 366, 367 (Tex.1993). One such equitable principle is that equity aids the diligent and not those who slumber on their rights. *Id.* A party asserting the defense of laches must show both an unreasonable delay by the mandamus petitioner and harm resulting from the delay. *Rogers v. Ricane Enters.,* 772 S.W.2d 76, 80 (Tex.1989). Delay alone will not constitute laches; injury or prejudice must also be established. *Lawrence v. Lawrence,* 911 S.W.2d 443, 449 (Tex. App.-Texarkana 1995, writ denied). Laches is a question of fact that should be determined by considering all of the cir-

cumstances in each particular case. *See Tribble & Stephens Co. v. RGM Constructors, L.P.,* 154 S.W.3d 639, 669 (Tex.App.-Houston [14th Dist.] 2004, pet. denied).

■ Here, the trial court signed its order denying Mary's motions to disqualify Keen and revoke consent to the Agreement on October 30, 2009. The trial court issued its additional findings of fact and conclusions of law on November 25, 2009. Mary petitioned for mandamus on December 22, 2009, and explained that the delay was caused because she was waiting to review the trial court's additional findings of fact and conclusions of law. Gary does not indicate how he was harmed by the delay. *See Rogers,* 772 S.W.2d at 80. Because Mary adequately explains her brief delay and Gary fails to show harm, we hold that Mary has not slumbered on her rights.

### Collaborative and Cooperative Law

The case before us concerns the legitimacy of cooperative law. Because cooperative law is untreated in Texas case law, and its more established cousin, collaborative law, only receives minor treatment, a brief exposition of each is warranted.

Collaborative law is codified in the Texas Family Code, which provides, in part:

(a) On a written agreement of the parties and their attorneys, a dissolution of marriage proceeding may be conducted under collaborative law procedures.

(b) Collaborative law is a procedure in which the parties and their counsel agree in writing to use their best efforts and make a good faith attempt to resolve their dissolution of marriage dispute on an agreed basis without resorting to judicial intervention except to have the court approve the settlement agreement, make the legal pronouncements, and

sign the orders required by law to effectuate the agreement of the parties as the court determines appropriate. The parties' counsel may not serve as litigation counsel except to ask the court to approve the settlement agreement.

(c) A collaborative law agreement must include provisions for:

(1) full and candid exchange of information between parties and their attorneys as necessary to make a proper evaluation of the case;

(2) suspending court intervention in the dispute while the parties are using collaborative law procedures;

(3) hiring experts, as jointly agreed, to be used in the procedure

(4) *withdrawal of all counsel involved in the collaborative law procedure if the collaborative law procedure does not result in settlement of the dispute;* and

(5) other provisions as agreed to by the parties consistent with a good faith effort to collaboratively settle the matter.

. . . .

TEX. FAM.CODE ANN. § 6.603 (Vernon 2006) (emphasis added).

Collaborative law is a variety of alternative dispute resolution, used most commonly in the context of divorce, that "provides for an advance agreement entered into by the parties and the lawyers in their individual capacities, under which the lawyers commit to terminate their representations in the event the settlement process is unsuccessful and the matter proceeds to litigation." Stephanie Smith and Janet Martinez, *An Analytic Framework for Dispute System Design,* 14 HARV. NEGOT. L. REV. 123, 166 (2009). Developed in Minnesota in 1990, collaborative law attempts to fos-

ter an amiable rather than an adversarial atmosphere by creating a "four-way" agreement between each party and their attorneys "in which all are expected to participate actively." John Lande and Gregg Herman, *Fitting the Forum to the Family Fuss*, 42 FAM. CT. REV. 280, 283 (2004).

The presence of a disqualification agreement is widely held to be the minimum qualification for calling a practice collaborative law. *Id.; see also* Pauline Tesler, *Collaborative Law: Achieving Effective Resolution in Divorce Without Litigation* 5–6 (American Bar Association 2008) ("There is really only one irreducible minimum condition for calling what you do 'collaborative law': you and the counsel for the other party must sign papers disqualifying you from ever appearing in court on behalf of either of these clients against the other."). Specifically, collaborative law attorneys cannot represent their collaborative clients in litigation if the collaborative process fails, but collaborative law clients retain their right to pursue litigation with new counsel. John Lande, *Possibilities for Collaborative Law: Ethics and Practice of Lawyer Disqualification and Process Control in a New Model of Lawyering*, 64 OHIO ST. L.J. 1315, 1322 n. 20 (2003).

In some jurisdictions, collaborative law attorneys may continue to represent their clients in arbitration if the parties agree to arbitration in the collaborative law agreement. *See, e.g.,* N.C. GEN.STAT. § 50–78 (2007) (providing, "The parties' attorneys for the collaborative law proceeding may also serve as counsel for any form of alternate dispute resolution pursued as part of the collaborative law agreement"). Although case law has not addressed the issue, Texas appears to preclude a collaborative-law attorney's representation of a collaborative-law client in arbitration. *See* TEX. FAM.CODE ANN. § 6.603(c)(4).

Akin to collaborative law, cooperative law "is a process which incorporates many of the hallmarks of Collaborative Law but does not require the lawyer to enter into a contract with the opposing party providing for the lawyer's disqualification." Smith and Martinez, 14 HARV. NEGOT. L. REV. at 166. "Cooperative law includes a written agreement to make full, voluntary disclosure of all financial information, avoid formal discovery procedures, utilize joint rather than unilateral appraisals, and use interest-based negotiation." Lande and Herman, 42 FAM. CT. REV. at 284. Put simply, cooperative law agreements mirror collaborative law agreements in spirit and objective, but lack the disqualification clause unique to collaborative law agreements.

Mary portrays cooperative law as an illegitimate aberration of collaborative law, and asks that the Agreement be interpreted by the statutory standards of a collaborative law agreement. However, it is noteworthy that at least one legal association has determined that cooperative law passes ethical muster while collaborative law does not. The Ethics Committee for the Colorado Bar Association states:

[T]he practice of Collaborative Law violates Rule 1.7(b) of Colorado Rules of Professional Conduct insofar as a lawyer participating in the process enters into a contractual agreement with the opposing party requiring the lawyer to withdraw in the event that the process is unsuccessful. The Committee further concludes that pursuant to Colo. RPC 1.7(c) the client's consent to waive this conflict cannot be validly obtained. Because Cooperative Law lacks the disqualification agreement found in Collaborative Law,

the practice of Cooperative Law is not per se unethical.[4]

Colo. Bar Ass'n Ethics Comm., Formal Op. 115 (Feb. 24, 2007).

Here, we do not weigh the legitimacy of collaborative law; it already has been adopted in Texas.[5] Instead, we examine whether the collaborative law statute excludes the use of cooperative agreements and whether Texas public policy permits cooperative law, a matter of first impression in this court. According to experts, cooperative law is a small but legitimate movement akin to collaborative law. *See, e.g.,* Hon. Tommy Bryan, *Saying "No" To Court?*, 70 ALA. LAW. 434, 436 (2009); Lande and Herman, 42 FAM. CT. REV. at 284. Like collaborative law, it possesses both benefits and detriments. For example, the absence of a disqualification agreement offers advantages but also poses disadvantages. Lande and Herman, 42 FAM. CT. REV. at 284. Specifically, "parties and lawyers may act reasonably only if they face a credible threat of litigation." *Id.* Additionally, cooperative law clients are less likely to feel mired in the cooperative process because they need not hire and educate new lawyers should litigation ensue. *See* Bryan, 70 ALA. LAW. at 436. Conversely, collaborative law clients may feel unduly pressured to complete the collaborative process rather than pur-

sue litigation because of the cost and inconvenience of hiring and educating a new attorney. *Id.* Of course, cooperative law threatens to "taint the negotiation by undermining a problem-solving atmosphere." Lande, 42 FAM. CT. REV. at 284.

While we have not encountered cooperative law's codification in any state's code, neither have we encountered its prohibition.[6] In fact, as we have observed, it has been found to be a better system in at least one jurisdiction. *See* Colo. Bar Ass'n Ethics Comm., Formal Op. 115.

Against this general backdrop, we must determine whether the collaborative law statute controls this agreement and, if not, whether a cooperative law agreement is void as a matter of public policy within the State of Texas. We will first consider whether the collaborative law statute controls before determining whether cooperative law agreements violate public policy.

### Applicability of the Collaborative Law Statute

 In her first point of error, Mary asserts that Keen must be disqualified because Keen's continued representation of Gary violates the Texas collaborative law statute. Specifically, Mary contends that "[u]sing a slightly different title for the ADR agreement does not avoid the protec-

---

**4.** Colorado's Rules of Professional Conduct, at the time the ethics opinion was issued, provided: "A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to ... a third person ... unless: (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation." Colo. Bar Ass'n Ethics Comm., Formal Op. 115 (Feb. 24, 2007)

**5.** Indeed, Texas was the first state to codify collaborative law. Larry R. Spain, *Collaborative Law: A Critical Reflection on Whether a Collaborative Orientation Can Be Ethically In-*

*corporated into the Practice of Law,* 56 BAYLOR L. REV. 141, 151 (2004).

**6.** Collaborative law is codified in only a handful of states. *See* Pauline Tesler, COLLABORATIVE LAW: ACHIEVING EFFECTIVE RESOLUTION IN DIVORCE WITHOUT LITIGATION 132 (American Bar Association 2008). However, its general lack of codification has not hindered its proliferation. Collaborative law has spread throughout the United States, Canada, Australia, and Western Europe. Hon. Tommy Bryan, *Saying "No" To Court?*, 70 ALA. LAW. 434, 434 (2009).

tions of the statute." Gary responds that the collaborative law statute is inapplicable to a cooperative law agreement.

The trial court determined that the Agreement is a cooperative law agreement, not a collaborative law agreement, and therefore need not conform to Texas's collaborative law statute. The Agreement does not suffer from a crisis of identity; it does not reference collaborative law or the collaborative law statute.

Mary contends that "leaving out a required element does not avoid a statute; it violates it." In order for this to be true, however, the statute would either have to mandate its application or forbid the use of cooperative law agreements. We hold that it does neither.

It is clear by its plain language that the collaborative law statute is elective, not mandatory. Subsection (a) of the statute explicitly provides that "a dissolution of marriage proceeding *may* be conducted under collaborative law procedures." Tex. Fam.Code Ann. § 6.603(a) (emphasis added). Nothing in the statute mandates its usage. Instead, parties that elect to follow its procedures obtain certain benefits from the trial court. The parties can obtain a judgment on their collaborative law agreement by signing the settlement agreement and including a boldfaced, capitalized, or underlined statement that the agreement is not subject to revocation. *Id.* § 6.603(d). If the parties provide proper notice to the trial court, the court is precluded from setting a hearing or trial in the case, imposing discovery deadlines, requiring compliance with scheduling orders,

or dismissing the case while the parties are using the process. *Id.* § 6.603(e). Additionally, the statute incorporates the provisions for confidentiality of alternative dispute resolution procedures as provided in Chapter 154 of the Civil Practices and Remedies Code for collaborative law procedures. *Id.* § 6.603(h).

In order to obtain these benefits, the parties must enter into an agreement providing for (1) a full and candid exchange of information; (2) suspending court intervention in the dispute while the parties are using collaborative law procedures; (3) hiring any experts jointly; (4) withdrawal of all counsel in the collaborative law procedure if the collaborative law procedure does not result in settlement of the dispute; and (5) other provisions agreed to by the parties that are consistent with a good faith effort to collaboratively settle the suit.[7] *Id.* § 6.603(c). The Agreement signed by Mary and Gary does not require the withdrawal of counsel if settlement is not obtained, the fourth requirement for application of the collaborative law statute. Accordingly, by the plain language of the statute, the collaborative law procedures and resulting benefits do not apply to the Agreement.

Additionally, nothing in the statute or in its legislative history leads us to the conclusion that the collaborative law statute forbids parties in Texas from entering into cooperative law agreements. It has been the stated policy of Texas from at least 1987 "to encourage the peaceable resolution of disputes ... and the early settle-

---

7. Mary argues that a collaborative law agreement must also provide, in a prominently displayed statement that is boldfaced, capitalized, or underlined, that the agreement is not subject to revocation and must be signed by each party and the party's attorneys. This is incorrect. Under the statute, any *settlement* agreement reached by the parties as a result

of the collaborative law process must contain that verbiage and must be signed by the parties and their attorneys. Tex. Fam.Code Ann. § 6.603(d). Because the parties never reached a settlement agreement, this section is not applicable, even if the remainder of the statute were otherwise applicable.

ment of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM.CODE ANN. § 154.002 (Vernon 2005). There is no statute or case law in Texas that explicitly prohibits any specific form of alternative dispute resolution.

The collaborative law statute is one of four alternative dispute resolution processes that the Texas legislature specifically encourages parties in divorce proceedings to utilize. The four processes are arbitration, mediation, collaborative law, and informal settlement conferences. TEX. FAM. CODE ANN. §§ 6.601–.604 (Vernon 2006). Nothing in these statutes states that they are the exclusive forms of alternative dispute resolution available to parties to a divorce.

Even if these were the exclusive forms of alternative dispute resolution available to parties to a divorce, the Agreement specifically cites to sections 6.601 and 6.604 of the Family Code. Those are the arbitration and informal settlement conference provisions, respectively. TEX. FAM.CODE ANN. §§ 6.601, .604.

In an informal settlement conference, "[t]he parties to a suit for dissolution of a marriage may agree to one or more informal settlement conferences and may agree that the settlement conferences may be conducted with or without the presence of the parties' attorneys, if any." TEX. FAM. CODE ANN. § 6.604(a). The legislature did not in any other way limit or constrict the parties' abilities to determine how informal settlement conferences would be conducted. Because this statute is deliberately silent as to the procedures that can be used in informal settlement conferences, we must conclude that the legislature meant to cast a wide net and give the parties wide latitude in deciding how to structure them, including structuring them through a cooperative law agreement.

The dissent argues that the legislature's enacting of the collaborative law statute is proof that they meant to exclude cooperative law agreements. We cannot agree. The legislature knows how to conscribe permissible actions when other related actions would be in violation of public policy. *See, e.g.,* TEX. BUS. & COM.CODE ANN. § 15.05 (Vernon 2002) (mandating every contract in restraint of trade is unlawful), § 15.50 (Vernon Supp. 2009) (providing strict requirements for covenants not to compete to avoid violation of public policy). The legislature has taken no such action here. Instead, it has determined that alternative dispute resolution is beneficial and encourages it. TEX. CIV. PRAC. & REM.CODE ANN. § 154.002. Given the legislature's broad approval of alternative dispute resolution, we find no reason to determine that it meant to prohibit parties from entering into cooperative law agreements.

We overrule Mary's first point of error.

### Applicability of the Arbitration Provision

In her second point of error, Mary contends that the trial court abused its discretion by denying her motion to revoke her consent to arbitrate because (1) the Agreement is unenforceable because it violates the public policy of Texas; (2) Gary's dishonest conduct within the cooperative process served to breach and thereby invalidate the Agreement; (3) she lacked mental capacity and the Agreement was obtained fraudulently; and (4) she revoked her consent to the Agreement.[8] Mary also as-

---

8. Before us, Mary also contends that she signed the agreement as a result of mistake. However, she did not assert this defense before the trial court. Consequently, we may not consider in this proceeding. *See In re Am. Optical Corp.,* 988 S.W.2d 711, 714 (Tex. 1998).

serts that the trial court abused its discretion by determining that the second and third issues must be determined by the arbitrator.

## A. Standard of Review

 A party moving to compel arbitration must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims asserted fall within the scope of that agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex.1999). If the movant establishes that an arbitration agreement governs the dispute, the burden then shifts to the party opposing arbitration to establish a defense to the arbitration agreement. *In re Provine*, 312 S.W.3d 824, 829 (Tex. App.-Houston [1st Dist.] 2009, orig. proceeding). A party may revoke the agreement only on a ground that exists at law or in equity for the revocation of a contract. Tex. Civ. Prac. & Rem.Code Ann. § 171.001(b) (Vernon 2005). "Once the trial court concludes that the arbitration agreement encompasses the claims, and that the party opposing arbitration has failed to prove its defenses, the trial court has no discretion but to compel arbitration and stay its own proceedings." *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex.2001).

 Whether an agreement imposes a duty to arbitrate is a question of law which the appellate court reviews de novo. *In re Provine*, 312 S.W.3d at 829. We apply ordinary state-law principles governing contracts to determine whether an agreement to arbitrate was formed. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227–28 (Tex.2003). "[A]bsent unmistak-

able evidence that the parties intended to the contrary, it is the courts rather than the arbitrators that must decide 'gateway matters.'" *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex.2005). An appellate court may not deal with disputed areas of fact in an original mandamus proceeding. *West v. Solito*, 563 S.W.2d 240, 245 (1978).

## B. Enforceability of the Arbitration Provision

Mary argues that the arbitration provision cannot be enforced because the Agreement, generally, is not enforceable because it violates public policy.

 Even if the collaborative law section of the Agreement were in violation of public policy, this does not automatically mean that the arbitration section of the Agreement is unenforceable.

> An illegal or unconscionable provision of a contract may generally be severed so long as it does not constitute the essential purpose of the agreement. Whether or not the invalidity of a particular provision affects the rest of the contract depends upon whether the remaining provisions are independent or mutually dependent promises, which courts determine by looking to the language of the contract itself. The relevant inquiry is whether or not parties would have entered into the agreement absent the unenforceable provisions.

*In re Poly–America, L.P.*, 262 S.W.3d 337, 360 (Tex.2008).

The Agreement in this case consists of four sections: (1) the preamble, stating the purpose of the Agreement; (2) the

---

Mary also asserts that the trial court abused its discretion because Gary, although subpoenaed to testify, did not attend the hearing on Mary's motions to disqualify Keen and revoke consent to the Agreement.

However, Mary fails to show how Gary's lack of attendance was the result of an abuse of discretion by the trial court. *See Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992).

provisions for their collaborative law agreement; (3) the provisions for their arbitration agreement; and (4) miscellaneous provisions. In the first section, the parties "acknowledge[d] the shared belief that it is in the best interests of the parties to avoid litigation." Both the cooperative law agreement section and the arbitration agreement section accomplish this stated purpose. Significantly, the Agreement only allowed the parties about two-and-a-half months to resolve their dispute through the cooperative law process. After that, the arbitration provision controls. The arbitration section is the longest section and contains the most detailed procedures. The title of the Agreement notwithstanding, it is reasonable to determine that the arbitration section is an independent agreement that the parties would have agreed to even without the presence of the cooperative law section. Accordingly, even if the collaborative law agreement were void, the arbitration provision would be severable.

 Nevertheless, we conclude that the cooperative law portion of the Agreement does not violate public policy. Whether a contract violates public policy is a question of law we review de novo. *Lawrence v. CDB Servs., Inc.,* 44 S.W.3d 544, 555 (Tex.2001) (superceded by statute on other grounds). Public policy is a vague and uncertain term that is up to the power of the lawmaking body to define. *Tex. Commerce Bank, N.A. v. Grizzle,* 96 S.W.3d 240, 250 (Tex.2002) (quoting *Lawrence,* 44 S.W.3d at 553). "[C]ourts are apt to encroach upon the domain of that branch of the government if they characterize a transaction as invalid because it is contrary to public policy, unless the transaction contravenes some positive statute or some well-established rule of law." *Id.* (quoting *Lawrence,* 44 S.W.3d at 553).

 Texas expresses its public policy through its statutes. *Id.* Therefore, "to determine whether a contract violates public policy, we consider the policies underlying any applicable statutes." *Lawrence,* 44 S.W.3d at 555. The appropriate test when considering whether a contract violates public policy "is whether the tendency of the agreement is injurious to the public good, not whether its application in a particular case results in actual injury." *Hazelwood v. Mandrell Indus. Co., Ltd.,* 596 S.W.2d 204, 206 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.).

 With respect to domestic disputes, as well as in other areas of the law, Texas public policy permits and encourages parties to enter into agreements to submit disputes to various forms of alternative dispute resolution. *See, e.g.,* Tex. Fam.Code Ann. §§ 6.601–.604; Tex. Civ. Prac. & Rem.Code Ann., Title 7. Texas public policy also strongly favors "preserving the freedom to contract." *Lawrence,* 44 S.W.3d at 553. "The courts will not enforce a contract whose provisions are against public policy." *Sacks v. Dallas Gold & Silver Exch., Inc.,* 720 S.W.2d 177, 180 (Tex.App.-Dallas 1986, no writ).

 We can see no reason why we should hold that cooperative law agreements violate public policy in Texas. Neither the collaborative law statute nor common law prohibit the practice of cooperative law in Texas, and Mary has offered no persuasive evidence as to why cooperative law agreements cannot be negotiated by parties within Texas's generous ADR ambit. *See* Tex. Civ. Prac. & Rem.Code Ann. § 154.002. As we have noted, experts generally neither laud nor condemn it, but note its benefits and detriments as a legitimate ADR procedure akin to collaborative law.

In fact, due to their strong similarities, we could find that cooperative law agreements violate public policy only if we were to determine that allowing the parties to retain their original attorneys if they fail to reach an agreement violates public policy. We see no justification for this result.

Although Mary does not contend that she disclosed confidential information to Keen that could be utilized against her in litigation, the possibility of a client's disclosure of privileged information to opposing counsel at a "four-way" meeting is not insignificant. *See* Lande, 64 OHIO ST. L.J. at 1341–42 (generally critical of collaborative law). "Four-way" meetings are common to both collaborative and cooperative law, but, as has been repeatedly underscored, only cooperative law permits retention of the same counsel in litigation. *See* Smith and Martinez, 14 HARV. NEGOT. L. REV. at 166. We must determine, then, whether this retention of counsel in litigation, in light of possible disclosure of privileged information, is injurious to the public good. *See Hazelwood,* 596 S.W.2d at 206.

It is noteworthy that collaborative law, a process blessed by the Texas legislature, poses nearly the same risk of disclosure of privileged information. Specifically, a collaborative client in a four-way meeting may, in the collaborative spirit of the moment, divulge confidential information to both the opposing party and the opposing party's attorney. *See* Lande, 64 OHIO ST. L.J. at 1341–42. The opposing attorney will be disqualified from ensuing litigation, but the opposing party, having also heard the confidential information, will not. *See* TEX. FAM.CODE ANN. § 6.603(c)(4).

Specifically, in collaborative law, nothing prevents the opposing party privy to the confidential disclosure from imparting the information to his new litigation counsel. This risk did not prevent the Texas legisla-

ture from adopting collaborative law. Nor should cooperative law's similar risk lead to a prohibition of cooperative law.

Moreover, the only harm that Mary can identify that she has suffered is a loss of the right to force her husband to obtain a new attorney. She does not articulate why this right is so fundamental that the lack of it should be held to violate public policy.

The dissent argues that the cooperative law agreement violates public policy because the collaborative law statute "provides for returning the case to the regular docket setting for trial or dismissal without prejudice if settlement is not reached in two years," while the Agreement terminated by its own terms after only two-and-one-half months but then required the parties to proceed to binding arbitration. To the degree that the dissent suggests that a time less than two years violates public policy, we disagree. The statute precludes a trial court from taking certain actions while the parties are engaged in the collaborative law process. TEX. FAM.CODE ANN. § 6.603(e). If, however, the collaborative law process extends for more than two years, the trial court *may* set the suit for trial on the regular docket or dismiss the suit without prejudice. *Id.* § 6.603(g). This is not mandatory. Even if it were, it only sets a maximum amount of time the process can continue. It does not set a minimum. Nor could it, considering that the stated purpose of the statute is for the process to be "entirely voluntary and participation may be terminated at any time." House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 1363, 77th Leg., R.S. (2001). If it can be terminated at any time, certainly the parties can agree to a specific termination date at the time of entering into the agreement.

To the degree that the dissent suggests that the arbitration provision in the Agreement renders it against public policy, this

conclusion cannot stand. First and foremost, the subsection that the dissent cites to for support for its argument that a collaborative law agreement cannot proceed to arbitration merely provides that *if* the parties have not resolved their divorce through the collaborative law process within two years, the court *may* set the suit for trial. *Id.* § 6.603(g). A provision allowing a judge to set a case for trial after waiting for two years is distinctly different from a provision that prohibits parties from agreeing to give up their right to a trial.

Second, arbitration is one of the specifically condoned forms of alternative dispute resolution in the Family Code. TEX. FAM. CODE ANN. § 6.601. It cannot be said that a specifically condoned form of alternative dispute resolution violates public policy when it is included in an agreement for another specifically condoned form of alternative dispute resolution—such as collaborative law—or even when it is included in an agreement that has not received statutory recognition—such as cooperative law. Even if cooperative law agreements did violate public policy in Texas, an inclusion of a statutorily condoned action cannot heighten its violation.

Third, the collaborative law statute specifically states that collaborative law agreements can contain "other provisions as agreed to by the parties consistent with a good faith effort to collaboratively settle the matter." TEX. FAM.CODE ANN. § 6.603(c)(5). Arbitration is specifically condoned in resolution of divorces. TEX. FAM.CODE ANN. § 6.601. Accordingly, its inclusion in a collaborative law agreement cannot be inconsistent with a good faith effort to collaboratively settle the matter. By extension, its inclusion in a cooperative law agreement cannot be used to create a contrast that would somehow render it in violation of public policy.

### C. Breach of the Agreement

■ Gary proved (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims asserted fall within the scope of that agreement. *See In re Oakwood,* 987 S.W.2d at 573. Specifically, Gary offered the signed Agreement. As we have already determined, the fact that the Agreement is framed in cooperative law does not render it invalid. Moreover, it is undisputed that Gary's claims fall within the scope of the Agreement. *Id.* When an agreed final decree of divorce, signed by the court, was not submitted to the court by April 30, 2009, the Agreement's arbitration clause was triggered.

■ At the hearing, the trial court determined that the arbitrator should determine whether Gary breached the Agreement. The trial court explained that, based upon the lack of formal, sworn discovery, it was incapable of making an informed determination of whether Gary had honestly complied with the cooperative law process. Additionally, the parties had not produced a sworn inventory. Breach of the Agreement by not conforming to its parameters is not a "gateway matter" properly addressed by a trial court. *In re Weekley Homes, L.P.,* 180 S.W.3d 127, 130. Accordingly, the trial court did not abuse its discretion by determining that the arbitrator should decide whether Gary breached the Agreement.

### D. Capacity and Fraud

■ Unlike breach of the Agreement, Mary's defenses of lack of mental capacity and fraud are gateway matters best addressed by a trial court. *Id.* The record, however, does not support that the trial court ordered the arbitrator to address Mary's defenses of lack of mental capacity and fraud. Implicitly, the trial court considered them and found them unmeritorious. In its October 30, 2009 order, the

trial court denied Mary's motion to revoke consent to arbitration. At the hearing, the trial court explicitly determined that Mary's breach of contract defense must be determined by the arbitrator, but did not explicitly address her lack of mental capacity and fraud defenses. Accordingly, we conclude that Mary's contention that the trial court delegated determination of Mary's defenses of lack of mental capacity and fraud to the arbitrator is not supported by the record. Furthermore, we may not determine whether the trial court abused its discretion in determining that Mary's defenses of lack of mental capacity and fraud failed to invalidate the Agreement because such determinations involve disputed areas of fact. *West*, 563 S.W.2d at 245.

### E. Revocation of consent

■ Finally, Mary argues that she revoked her consent to the Agreement. She correctly asserts that a party may withdraw consent to a Rule 11 settlement agreement prior to judgment. *See Kennedy v. Hyde*, 682 S.W.2d 525, 528 (Tex. 1984). Mary argues, "The present case is analogous because it provides for a settlement process which would inevitably lead to a judgment." Regardless of whether the process would lead to a judgment, the simple fact is that there currently is not a judgment. This rule only allows parties to revoke their consent to the entry of an agreed judgment, not the process that could lead to such a judgment. The parties cannot revoke their consent to the process that would lead to a judgment simply because that is the ultimate goal. Accordingly, this rule does not apply.

Moreover, this rule only applies to *agreed* judgments. The arbitration process, more than likely, will lead to a judgment that at least one of the parties does not agree to, just as the judgment follow-

ing a trial would. This does not mean that a party can revoke her "consent" to it. Accordingly, we hold that the trial court did not abuse its discretion by denying Mary's motion to revoke consent.

■ Finally, we note that Mary and Gary twice asked the court to enforce their arbitration provision. The trial court complied both times. It was not until after both of these orders had been signed that Mary attempted to revoke her consent to arbitration. "[A] party cannot complain on appeal that the trial court took a specific action that the complaining party requested." *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 862 (Tex.2005).

We overrule Mary's second point of error.

### Conclusion

The trial court did not abuse its discretion by denying Mary's motions to disqualify Keen and revoke consent to the Agreement. We therefore deny the petition for writ of mandamus.

Justice KEYES dissenting.

EVELYN V. KEYES, Justice, dissenting.

The central issue in this case of first impression interpreting Texas's collaborative law statute, Section 6.603 of the Texas Family Code, is whether a "cooperative law agreement" that is not provided for by statute and whose provisions track and conflict with the provisions of the collaborative law statute and the arbitration provision within it are valid and enforceable under Texas law or void as against public policy. The majority holds that both the "cooperative law agreement" and its arbitration clause are valid and enforceable. I would hold that neither is.

By petition for writ of mandamus, relator, Mary Lynn Mabray, challenges the trial court's October 30, 2009 order (1) ordering the parties to arbitration under the terms of the parties' "Cooperative Law Dispute Resolution Agreement" ("the Agreement") and (2) denying her motion to disqualify Brenda Keen, counsel for her ex-husband, Gary Allen Mabray, for failing to withdraw as counsel following the failure of settlement efforts under the cooperative law agreement.

Mary argues that the Agreement is "void and/or unenforceable" because (1) it fails to comply with Texas's collaborative law statute, including its provision that collaborative counsel withdraw if no settlement agreement is reached; (2) enforcement of the Agreement would violate public policy as reflected in the collaborative law statute because she would be required to participate in further litigation against counsel disqualified by statute; (3) the trial court clearly abused its discretion by requiring her to proceed to arbitration under an alternative dispute resolution agreement that fails to comply with Texas statutory law and is against public policy; and (4) even if formerly enforceable, the Agreement and the arbitration clause within it are no longer enforceable because Gary materially breached the agreement and, in response, she revoked her consent to the agreement and terminated it. Gary opposes Mary's arguments and contends her petition for writ of mandamus is barred by laches.

I agree with the majority that Mary's petition is not barred by laches. I would hold, however, that both the "cooperative law agreement" and the arbitration provision within it are void and unenforceable as against the public policy of the State of Texas. Therefore, I would provisionally grant mandamus relief.

## Background

After 35 years of marriage, Mary discovered her husband Gary's ongoing infidelity and sought a divorce. She retained Harry L. Tindall, who recommended that the parties engage in a process called "cooperative law" to settle the divorce. On February 12, 2008, Mary and Gary and their attorneys signed a four page document titled "Cooperative Law Dispute Resolution Agreement." The Agreement was not filed with the trial court.

The Agreement acknowledged the parties' "shared belief that it is in the best interests of the parties to avoid litigation." Thus, it stated that the parties agree to "effectively and honestly communicate with each other with the goal of efficiently and economically settling the terms of the dissolution of the marriage." The Agreement provided for the joint retention of experts, if needed, and it forbade formal discovery unless agreed upon, relying instead on the parties' agreement to deal with each other in "good faith." It further provided,

> No formal discovery procedure will be used unless specifically agreed to in advance. The parties will be required to sign a sworn inventory and appraisement if requested by the other party.

> We acknowledge that, by using informal discovery, we are giving up certain investigative procedures and methods that would be available to us in the litigation process. We give up these measures with the specific understanding that the parties will make to each other a complete and accurate disclosure of all assets, income, debts, and other information necessary for us to reach a fair settlement. Participation in this process is based on the assumptions that we have acted in good faith and that the parties have provided complete and ac-

curate information to the best of their ability.

Also included in the Agreement was an arbitration provision, which stated:

> The parties further agree that if this case has not been settled by negotiation and an Agreed Final Decree of Divorce has not been submitted to and signed by the Court before April 30, 2009 then this matter will be submitted to binding arbitration pursuant to the Joint Motion for Referral to Arbitration and Agreed Order of Referral to Arbitration attached hereto and made a part hereof.

> The parties agree to be bound by this agreement, the Texas Alternative Dispute Resolution Procedures Act (chapter 154 of the Texas Civil Practice and Remedies Code), the Texas General Arbitration Law (chapter 171 of the Texas Civil Practice and Remedies Code), Section 6.601, Texas Family Code, and the laws of the state of Texas.

The cooperative law process failed, and an agreed final decree of divorce was not submitted to the court by April 30, 2009. Neither party had requested a sworn inventory and appraisement.

On March 11, 2009, the parties jointly moved for referral to arbitration, and, on March 18, 2009, the court entered the first Agreed Order for Referral to Arbitration, appointing an arbitrator and scheduling the arbitration for June 18, 2009. When the arbitrator realized that he had consulted with Mary regarding the divorce and thus could not serve as arbitrator, Gary filed an Opposed Motion to Appoint Substitute Arbitrator and For Entry of Order of Referral to Arbitration. The parties' agreed order appointing Donald R. Royall as substitute arbitrator was signed by the trial court on August 12, 2009, and the arbitration was scheduled for August 25 and 26, 2009.

In early August, Mary terminated her attorney-client relationship with Tindall and hired new counsel, Stephen Shoultz. Thereafter, Mary moved to disqualify Gary's counsel, Brenda Keen, on grounds that the Agreement was contrary to Texas public policy and therefore invalid. Specifically, Mary asserted that the Agreement sought to "contract around" Texas's collaborative law statute, section 6.603 of the Family Code. Because Brenda Keen would be unable to continue to represent Gary in litigation under a collaborative law agreement once the collaborative process had failed, Mary contended that, so too, Keen must be disqualified after the cooperative process failed. Mary also moved to revoke her consent to arbitration. She stated that Tindall had "forced" her to sign the Agreement while she was "emotionally distraught" over the divorce and under the influence of tranquilizers. She further contended that Gary "failed to truthfully and voluntarily disclose relevant information, including complete and accurate disclosure of all assets." Gary moved to enforce the Agreement and to compel arbitration, arguing that the Texas collaborative law statute is inapplicable to the parties' cooperative law agreement.

The trial court heard all motions on September 17, 2009. At the hearing, Mary contended that Gary had breached the cooperative law agreement by concealing assets, but Gary's counsel asserted that the arbitrator, not the trial court, should determine whether he had breached the Agreement. Gary himself did not attend the hearing, despite having been subpoenaed to attend and bring financial documents.

The trial court verified that no notice of collaborative law proceedings had been filed with the court and no order had been signed by the trial court setting the dates

for status reports,[1] as required by the collaborative law statute, section 6.603 of the Family Code.[2] The court reasoned that it could not impose an "attorneys-have-to-withdraw provision" in a non-collaborative law case, stating,

> The Code certainly includes, encourages all forms of ADR; and if they want to enter into an agreement which, apparently, they both signed, and call it Cooperative Law Agreement and it has some mechanisms to try to resolve the case through ADR rather than coming to the Court, I don't think there's any assumption that they can't do that.

Mary's counsel argued that Mary had revoked her consent to arbitration, and therefore there was no valid agreement to arbitrate, and she also argued that the trial court was required to determine whether a valid agreement existed. He further argued that the cooperative law agreement operated as a collaborative law agreement but violated Texas law by not providing for the withdrawal of attorneys, as required by Texas's collaborative law statute. He stated, "There is no basis in Texas law to just substitute in the word cooperative for collaborative and then say the statute does not exist."

Gary's counsel argued that breach of contract issues were a matter for the arbitrator to decide. She also argued that the

agreement was not a collaborative law agreement under the Texas statute, that "[n]o notice of collaborative law proceeding was filed, and the case had not been put on the collaborative track or no notice of updates, nothing."

The trial court agreed with Gary's counsel and granted Gary's motion. On October 30, 2009, the court signed an order compelling arbitration, which provides, in part:

> This case was not resolved by agreement of the parties before April 30, 2009, and the parties are required to arbitrate their divorce action pursuant to the Cooperative Law Dispute Resolution Agreement signed by the parties on February 12, 2009. . . .

> It is ordered that Mary Lynn Mabray's Motion to Disqualify Brenda Keen is hereby denied.

> It is ordered that Mary Lynn Mabray's First Amended Motion to Revoke Consent to Arbitration and Request for Jury Trial is hereby denied.

The trial court signed findings of fact and conclusions of law on October 21, 2009.

On November 25, the court signed additional findings of fact and conclusions of law that state:

> 1. Brenda Keen is not required to withdraw as attorney for Gary Allen

---

1. The following colloquy between the court and Gary's counsel, Brenda Keen, occurred:

 [The Court]: So, the case is not filed as a Collaborative Law Agreement under the statute?

 [Ms. Keen]: It is not, Your Honor.

 [The Court]: And there's been no order signed by the Court that approves collaborative law procedures and schedules and so forth.

 [Ms. Keen]: No notice of collaborative law proceedings was filed, and the case had not been put on the collaborative track or no notices of updates, nothing. It is not a collaborative case.

 [The Court]: And after the signing of the agreement that includes the referral to arbitration, it wasn't handled as a collaborative law case subsequent to that time either?

 [Ms. Keen]: No. It was always, it was always handled under the agreement, which is attached to my motion, to try to resolve it out of court by negotiation, and if we were unable to settle it by a date certain, we would go to submit all issues to binding arbitration.

2. Tex. Fam.Code Ann. § 6.603(f) (Vernon 2006).

Mabray after the parties failed to reach a settlement under the Cooperative Law Dispute Resolution Agreement.

2. The Cooperative Law Dispute Resolution Agreement is not governed by Texas Family Code § 6.603.

3. The Cooperative Law Dispute Resolution Agreement does not violate Texas Public Policy.

4. Brenda Keen is not disqualified to represent Gary Allen Mabray.

On December 22, 2009, Mary petitioned for writ of mandamus.

## Standard of Review

Mandamus relief is available only to correct a "clear abuse of discretion" when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex.1992) (orig. proceeding). A clear abuse of discretion occurs when a trial court "reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law." *Id.* at 839. The reviewing court may not substitute its judgment for that of the trial court when reviewing factual issues. *Id.* Even if the reviewing court would have decided the issue differently, it cannot disturb the trial court's decision unless the decision is shown to be arbitrary and unreasonable. *Id.* at 840. Appellate review of a trial court's determination of the legal principles controlling its ruling, however, is much less deferential. *Id.; In re Ching*, 32 S.W.3d 306, 310 (Tex.App.-Amarillo 2000, orig. proceeding). A trial court has no "discretion" in determining what the law is or in applying it to the facts. *Walker*, 827 S.W.2d at 840; *Ching*, 32 S.W.3d at 310. A clear failure of the trial court to analyze or apply the law correctly consti-

tutes an abuse of discretion that may result in the grant of an extraordinary writ. *Walker*, 827 S.W.2d at 840; *Ching*, 32 S.W.3d at 310.

## Collaborative and Cooperative Law

Mary argues that (1) the parties Cooperative Law Dispute Resolution Agreement is void or unenforceable as against public policy because it fails to comply with Texas's collaborative law statute, including its provision that collaborative counsel withdraw if no settlement agreement is reached; (2) enforcement of the Agreement would violate public policy by requiring her to participate in further litigation against counsel disqualified by statute; and (3) the trial court clearly abused its discretion by requiring her to proceed to arbitration under an alternative dispute resolution agreement that fails to comply with Texas's collaborative law statute and is against public policy. Mary contends that "[u]sing a slightly different title for the ADR agreement does not avoid the protections of the statute." Gary responds to these three issues that the collaborative law statute is inapplicable to a cooperative law agreement.[3]

The central issue in the case is, thus, whether, in the absence of a duly promulgated cooperative law statute, the public policy of the State of Texas permits marriages to be dissolved pursuant to private "cooperative law" agreements, unauthorized by statute, whose provisions track and conflict with the provisions of Texas's collaborative law statute. I would hold, on the basis of Texas public policy regarding the dissolution of marriage as set out in Texas's statutes, the legislative history of the collaborative law statute, and Texas case law, that the parties' "cooperative law" agreement is an illegal contract

---

**3.** Mary also argues that, even if the Agreement was formerly enforceable, she terminated it after Gary breached it and it is no longer enforceable.

whose enforcement is contrary to the public policy of the State of Texas. I would, therefore, hold the agreement void.

### 1. Collaborative Law and Cooperative Law Defined

I generally agree with and adopt the majority's statement of the distinction between collaborative law and cooperative law.

Essentially, collaborative law is a variety of alternative dispute resolution, most commonly used in the divorce context, that "provides for an advance agreement entered into by the parties and the lawyers in their individual capacities, under which the lawyers commit to terminate their representations in the event the settlement process is unsuccessful and the matter proceeds to litigation." Janet Martinez & Stephanie Smith, *An Analytic Framework for Dispute Systems Design*, 14 HARV. NEGOT. L. REV. 123, 166 (2009).

Texas provides by statute for the dissolution of a marriage in accordance with the collaborative law procedures set out in section 6.603 of the Family Code, which provides, in part:

(a) On a written agreement of the parties and their attorneys, a dissolution of marriage proceeding may be conducted under collaborative law procedures.

(b) Collaborative law is a procedure in which the parties and their counsel agree in writing to use their best efforts and make a good faith attempt to resolve their dissolution of marriage dispute on an agreed basis without resorting to judicial intervention except to have the court approve the settlement agreement, make the legal pronouncements, and sign the orders required by law to effectuate the agreement of the parties as the court determines appropriate. The parties' counsel may not serve as litigation counsel except to ask the court to approve the settlement agreement.

(c) A collaborative law agreement must include provisions for:

(1) full and candid exchange of information between the parties and their attorneys as necessary to make a proper evaluation of the case;

(2) suspending court intervention in the dispute while the parties are using collaborative law procedures;

(3) hiring experts, as jointly agreed, to be used in the procedure;

(4) withdrawal of all counsel involved in the collaborative law procedure if the collaborative law procedure does not result in settlement of the dispute; and

(5) other provisions as agreed to by the parties consistent with a good faith effort to collaboratively settle the matter.

(d) Notwithstanding Rule 11, Texas Rules of Civil Procedure, or another rule or law, a party is entitled to judgment on a collaborative law settlement agreement if the agreement:

(1) provides, in a prominently displayed statement that is boldfaced, capitalized, or underlined, that the agreement is not subject to revocation; and

(2) is signed by each party to the agreement and the attorney of each party.

(e) Subject to Subsection (g), a court that is notified 30 days before trial that the parties are using collaborative law procedures to attempt to settle a dispute may not, until a party notifies the court that the collaborative law procedures did not result in a settlement:

(1) set a hearing or trial in the case;

(2) impose discovery deadlines;

(3) require compliance with scheduling orders; or

(4) dismiss the case.

(f) The parties shall notify the court if the collaborative law procedures result in a settlement. If they do not, the parties shall file:

(1) a status report with the court not later than the 180th day after the date of the written agreement to use the procedures; and

(2) a status report on or before the first anniversary of the date of the written agreement to use the procedures, accompanied by a motion for continuance that the court shall grant if the status report indicates the desire of the parties to continue to use collaborative law procedures.

(g) If the collaborative law procedures do not result in a settlement on or before the second anniversary of the date that the suit was filed, the court may:

(1) set the suit for trial on the regular docket; or

(2) dismiss the suit without prejudice.

. . . .

TEX. FAM.CODE ANN. § 6.603 (Vernon 2006).

By contrast, cooperative law is essentially "a process which incorporates many of the hallmarks of Collaborative Law but does not require the lawyer to enter into a contract with the opposing party providing for the lawyer's disqualification." Martinez & Smith, 14 HARV. NEGOT. L. REV. at 166. Texas has no cooperative law statute.

### 2. Texas Public Policy

"It is the policy of [Texas] to encourage the peaceable resolution of disputes . . . and the early settlement of pending litigation through voluntary settlement procedures." TEX. CIV. PRAC. & REM.CODE ANN. § 154.002 (Vernon 2005). Texas public policy also strongly favors "preserving the freedom of contract." Lawrence v. CDB Servs., Inc., 44 S.W.3d 544, 553 (Tex.2001), superseded by statute on other grounds, TEX. LAB.CODE ANN. § 406.003(e), as recog-nized in Storage & Processors, Inc. v. Reyes, 134 S.W.3d 190 (Tex.2004). However, "[t]he courts will not enforce a contract whose provisions are against public policy." Sacks v. Dallas Gold & Silver Exch., Inc., 720 S.W.2d 177, 180 (Tex.App.-Dallas 1986, no writ); accord Lawrence, 44 S.W.3d at 555 (Baker, J., dissenting) (noting, "On several occasions, we have held otherwise freely-entered contracts void because they were contrary to public policy" (citing, e.g., Juliette Fowler Homes, Inc. v. Welch Assocs., Inc., 793 S.W.2d 660, 663 (Tex.1990))).

Texas expresses its public policy through its statutes. Tex. Commerce Bank, N.A. v. Grizzle, 96 S.W.3d 240, 250 (Tex.2002) (quoting Lawrence, 44 S.W.3d at 553). Therefore, "to determine whether a contract violates public policy, we consider the policies underlying any applicable statutes." Jankowiak v. Allstate Property & Cas. Ins. Co., 201 S.W.3d 200, 210 (Tex. App.-Houston [14th Dist.] 2006, no pet.) (quoting Lawrence, 44 S.W.3d at 555 (Baker, J., dissenting)).

Whether a contract violates public policy is a question of law the courts review de novo. Id. at 209. Generally, if a contract violates public policy it is void, not merely voidable. Lawrence, 44 S.W.3d at 555 (citing, e.g., Tom L. Scott, Inc. v. McIlhany, 798 S.W.2d 556, 560 (Tex.1990)). When a contract is void, neither party is bound thereby. Ex parte Payne, 598 S.W.2d 312, 317 (Tex.Civ.App.-Texarkana 1980, no writ), overruled on other grounds, Huff v. Huff, 648 S.W.2d 286 (Tex.1983). Neither estoppel nor ratification will make a contract that violates public policy enforceable. Lawrence, 44 S.W.3d at 555–56 (Baker, J., dissenting) (citing Richmond Printing v. Port of Houston Auth., 996 S.W.2d 220, 224 (Tex.App.-Houston [14th Dist] 1999, no pet.) and Ex parte Payne, 598 S.W.2d at 317). The appropriate test

when considering whether a contract violates public policy "is whether the tendency of the agreement is injurious to the public good, not whether its application in a particular case results in actual injury." *Hazelwood v. Mandrell Indus. Co.,* 596 S.W.2d 204, 206 (Tex.Civ.App.-Houston [1st Dist.] 1980, writ ref'd n.r.e.).

### 3. Texas Public Policy Regarding Marriage: Section 1.101 of the Family Code

Texas has expressly set out its public policy with respect to marriage in the Family Code, Subchapter B, "Public Policy," section 1.101, "Every Marriage Presumed Valid," which states:

> In order to promote the public health and welfare and to provide the necessary records, this code specifies detailed rules to be followed in establishing the marriage relationship. However, in order to provide stability for those entering into the marriage relationship in good faith and to provide for an orderly determination of parentage and security for the children of the relationship, it is the policy of this state to preserve and uphold each marriage against claims of invalidity unless a strong reason exists for holding the marriage void or voidable. Therefore, *every marriage entered into in this state is presumed to be valid unless expressly made void by Chapter 6 or unless expressly made voidable by Chapter 6 and annulled as provided by that chapter.*

TEX. FAM.CODE ANN. § 1.101 (Vernon 2006) (emphasis added). Chapter 6 expressly makes voidable marriages dissolved by collaborative law agreements made and performed in accordance with the procedures set out in Chapter 6, section 6.603 of the Family Code. Chapter 6 does not expressly make marriages voidable by "cooperative law" agreements. Therefore, a private "cooperative law" agreement has no power to dissolve a marriage under Texas law. *See id.; see also Capellen v. Capellen,* 888 S.W.2d 539, 545–46 (Tex. App.-El Paso 1994, writ denied) (stating, in context of analyzing "open courts" claim, that suits for divorce and suits affecting parent-child relationship are not subject to such common law causes of action because they are statutorily created and regulated proceedings); *Ulloa v. Davila,* 860 S.W.2d 202, 203 (Tex.App.-San Antonio 1993, no writ) (stating that Texas law does not recognize common law divorce, and thus, marriage can be terminated only by death or court decree) (citing *Estate of Claveria v. Claveria,* 615 S.W.2d 164, 167 (Tex.1981)). Under the plain language of section 1.101 of the Code, a marriage purportedly dissolved in accordance with a private "cooperative law agreement" remains presumptively valid under Texas law.

### 4. Texas Public Policy Regarding Collaborative Law: Section 6.603 of the Family Code

Unlike cooperative law agreements, collaborative law agreements are statutorily approved by Chapter 6 of the Texas Family Code as a method for dissolving a marriage under Texas law. The public policy regarding marriage set out in section 1.101 of the Family Code is echoed in the stated purpose of Texas's collaborative law statute as expressly set out both in the statute itself and in its legislative history. *See* TEX. FAM.CODE ANN. § 6.603(a), (b) (providing permission to conduct dissolution of marriage proceeding on written agreement of parties and their attorneys and describing requirements of statutorily valid collaborative law proceeding in detail).

Texas's collaborative law statute originated in Texas's 77th Legislature as House Bill 1363, and it was enacted as new section 6.603 of the Texas Family Code, effective September 1, 2001. *See id.* § 6.603. The final House Bill Analysis, dated June

12, 2001, states, under the heading, "Background and Purpose":

> Currently, different types of alternative dispute resolution procedures are encouraged to bring about a peaceable solution instead of litigation. Collaborative law, a new dispute resolution method, is being used primarily in family law cases relating to the dissolution of a marriage and the parent-child relationship in which the costs of a court battle can be both personally and financially overwhelming. *The collaborative law process offers parties the option to negotiate in good faith for an out-of-court settlement. The process is entirely voluntary and participation may be terminated at any time. The parties agree to a full exchange of records and to jointly hire experts. If a settlement is not reached, the attorneys must withdraw and the parties then employ trial counsel. House Bill 1363 includes the collaborative law process among other dispute resolution methods encouraged in actions relating to the dissolution of a marriage or suits affecting the parent-child relationship.*

House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 1363, 77th Leg., R.S. (2001) (emphasis added).

Under the heading "Analysis," the bill analysis states:

> House Bill 1363 amends the Family Code to provide that a collaborative law procedure (procedure) is a specified process, conducted under written agreement of the parties and their counsel, to reach a settlement agreement with minimal judicial intervention in a dissolution of marriage dispute or a suit affecting the parent-child relationship. *The bill sets forth provisions for what the agreement must include* . . . .

*Id.* (emphasis added). The analysis also states that, for the parties to be entitled to judgment on a collaborative law agreement, the agreement must "provide[ ] in a specified manner that [it] is not subject to revocation" and must be signed by each party and each party's attorney. *Id.* Finally, the analysis states that the bill requires notification to the court if the procedures result in a settlement, or the filing of a status report within a certain time period if they do not, and it states, "If the procedures do not result in a settlement on or before the second anniversary of the date that the suit was filed, the bill authorizes the court to set the suit for trial on the regular docket or dismiss the suit without prejudice." *Id.*

Section 6.603 of the Family Code restates the same purpose as the bill analysis:

> Collaborative law is a procedure in which the parties and their counsel agree in writing to use their best efforts and make a good faith attempt to resolve their dissolution of marriage dispute on an agreed basis without resorting to judicial intervention except to have the court approve the settlement agreement, make the legal pronouncements, and sign the orders required by law to effectuate the agreement of the parties as the court determines appropriate. The parties' counsel may not serve as litigation counsel except to ask the court to approve the settlement agreement.

Tex. Fam.Code Ann. § 6.603(b). It then sets out the mandatory requirements of a collaborative law agreement:

> (1) full and candid exchange of information between the parties and their attorneys . . .; (2) suspending court intervention . . . while the parties are using collaborative law procedures; (3) hiring experts, as jointly agreed . . .; (4) withdrawal of all counsel involved in the collaborative law procedure if the . . .

procedure does not result in settlement of the dispute; and (5) other provisions as agreed to by the parties consistent with a good faith effort to collaboratively settle the matter. *Id.* § 6.603(c). Section 6.603 also contains notice requirements to the parties regarding the binding effect of any settlement reached and to the court regarding any settlement, the provision of a status report if the case is not settled within a year, and a provision that the court may set the case for trial on the regular docket or dismiss it without prejudice if it does not settle within two years. *Id.* § 6.603(d), (f).

### 5. Contravention of Texas's Collaborative Law Statute, Section 6.603, by the "Cooperative Law Dispute Resolution Agreement"

The "cooperative law agreement" entered by the parties in this case shows full cognizance of the statement of purpose and the safeguards expressly enumerated in Texas's collaborative law statute—section 6.603 of the Family Code—and in the Bill Analysis approving collaborative law as an alternative, statutorily approved, method for the dissolution of a marriage. Indeed, the Agreement's provisions track the provisions in the collaborative law statute and expressly *contravene* its protections while taking advantage of its benefits.

#### (a) Lack of notice to the trial court of "cooperative law agreement"

Section 6.603 requires that parties notify the trial court of any settlement under collaborative law procedures, but it exempts collaborative law settlement agreements from filing with the court, which would otherwise be required for enforceability by Texas Rule of Civil Procedure 11, if certain conditions are met by the settlement agreement; and, in the absence of a settlement, the statute requires the parties to notify the trial court periodically of their progress through status reports. *See* TEX.R. CIV. P. 11 (providing that "no agreement between attorneys or parties touching any suit pending will be enforced unless it be in writing, signed and filed with the papers as part of the record, or unless it be made in open court and entered of record"); TEX. FAM.CODE ANN. § 6.603(d) (exempting collaborative settlement agreements from compliance with Rule 11), 6.603(e) (limiting actions that trial court may take once notified by parties that they will use collaborative procedures), 6.603(f) (providing method for putting trial court on notice of parties' agreement to use collaborative law procedures and requiring parties to submit status reports).

The parties to the "cooperative law agreement" indicated their awareness of the provisions of section 6.603 and their purpose by tracking the statement of the background and purpose of section 6.603 as set out in the statute, by including in the Agreement a provision to negotiate in good faith for an out-of-court settlement, and by agreeing to fully exchange records and to jointly hire experts.

However, their "cooperative law agreement" was not filed with the court as a Rule 11 agreement, nor were status reports filed with the trial court. *See* TEX.R. CIV. P. 11; TEX. FAMILY CODE ANN. § 6.603(e), (f). Indeed, the parties emphasize that they intentionally failed to incorporate into the "cooperative law agreement" those provisions of the collaborative law statute that provided for notice to the trial court. Thus, the court was never put on notice of the nature of the Agreement or the progress of the parties' settlement negotiations until the parties sought binding arbitration under the Agreement.

I would hold, therefore, that the Agreement is unenforceable by virtue of the

parties' failure to file their "cooperative law agreement" with the trial court as required by Rule 11 for the enforceability of all agreements "touching any suit pending" while they were negotiating a settlement for the dissolution of their marriage or, alternatively, by virtue of their intentional failure to file status reports, as required for compliance with the collaborative law statute.

### (b) Failure to provide for voluntary withdrawal from the Agreement and referral to binding arbitration

Also, where the legislatively stated purpose of the collaborative law statute is that the process is "entirely voluntary and participation may be terminated at any time," House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 1363, 77th Leg., R.S. (2001), the parties "cooperative law agreement" provides that "if this case has not been settled by negotiation and an Agreed Final Decree of Divorce has not been submitted to and signed by the Court before April 30, 2009 then this matter will be submitted to binding arbitration pursuant to the Joint Motion for Referral to Arbitration and Agreed Order of Referral to Arbitration attached hereto and made a part hereof." The collaborative law statute, by contrast, provides for returning the case to the regular docket setting for trial or dismissal without prejudice if settlement is not reached in two years. TEX. FAM.CODE ANN. § 6.603(g).

Thus, while the "cooperative law agreement" grounded itself in Texas statutory authority permitting binding alternative dispute resolution procedures, it pointedly skirted and violated the safeguards in the collaborative law statute expressly designed to ensure the voluntariness of parties' participation in collaborative law negotiations and further providing for return to the court's docket or dismissal should

the collaborative law process fail, violating both the letter and the spirit of section 6.603.

### (c) Failure to provide for withdrawal of counsel on failure of the settlement negotiations

The parties likewise ignored the provisions of the collaborative law statute that state, "The parties' counsel may not serve as litigation counsel except to ask the court to approve the settlement agreement," and that mandate "withdrawal of all counsel involved in the collaborative law procedure if the . . . procedure does not result in settlement of the dispute." *Id.* § 6.603(b),(c)(4). Gary then took advantage of the Agreement's silence and proceeded to binding arbitration with the same counsel he had used in the "cooperative law" negotiations, in plain contravention of sections 6.603(b) and (c).

Thus, for this reason as well, I would hold that the parties' Agreement violates Texas's collaborative law statute and its public policy and is void.

### 6. Violation of Texas Public Policy Regarding the Dissolution of Marriage: Section 1.101 of the Texas Family Code

The collaborative law procedures set out in detail in section 6.603 of the Family Code carry forward the express public policy of the State of Texas regarding the dissolution of marriages stated in section 1.101 of the Family Code—that policy being that,

in order to provide stability for those entering into the marriage relationship in good faith and to provide for an orderly determination of parentage and security for the children of the relationship, it is the policy of this state to preserve and uphold each marriage against claims of invalidity unless a strong reason exists for holding the marriage void or voidable

*Id.* § 1.101. Therefore, every marriage is presumed to be valid "unless expressly made voidable by Chapter 6 and annulled as provided by that chapter." *Id.* The parties' "cooperative law agreement" directly contravenes the policy set out in section 1.101 and the plain language of the statute by providing a private alternative to statutorily recognized means for dissolving marriages under Texas law.

The comparison between the "cooperative law agreement" in this case and Texas's collaborative law statute shows exactly why the statutory safeguards of section 6.603 were meticulously put in place by the Texas Legislature for parties wishing to engage in collaborative settlement negotiations pertaining to the dissolution of a marriage. Assuming that Gary did not make the "full and candid exchange of information" that Mary Lynn contends he did not make, Mary Lynn now finds herself bound to an agreement to settle through binding arbitration, whereas under Texas's collaborative law statute she could withdraw from the collaborative law agreement at any time. She is bound to this without having received the notice of a "prominently displayed statement that is boldfaced, capitalized, or underlined, that the agreement is not subject to revocation" required for binding a party to a settlement agreement reached pursuant to section 6.603(d)(1). *Id.* § 6.603(d)(1). She is denied the protection of having the trial court put on notice of the "cooperative" negotiations with their full disclosure and joint naming of experts. And she is denied the protections of the provisions in the collaborative law statute that the parties notify the court in which the dissolution of marriage is pending if the collaborative law procedures result in settlement or file a status report if they do not. *Id.* § 6.603(f). She is also denied the right to have the suit set for trial by the trial court or dismissed without prejudice should the

collaborative law procedures not result in a settlement on or before the second anniversary of the date the suit was filed. *Id.* § 6.603(g).

Finally, Mary is required to face Gary's counsel in the binding arbitration provided for by the cooperative law agreement to which she is consigned, whereas, under the collaborative law statute and its statement of purpose, collaborative law counsel are expressly required to withdraw if the collaborative law procedure does not result in settlement of the dispute. *Id.* § 6.603(c)(4). Not only does the "cooperative law agreement" violate the collaborative law statute in each of the ways set out above, but also the overall picking and choosing among the provisions of the collaborative law statute shows the clear intent of the drafters of the Agreement to avoid the protections of law prescribed by section 6.603.

To count the parties' cooperative law agreement as valid and enforceable is thus to deny all meaning to section 1.101 of the Family Code, setting out the express public policy of Texas with regard to marriage. Indeed, to enforce such a private agreement is to permit a party who has not negotiated in good faith and who has failed to perform his obligations under the agreement, while benefitting from good faith participation in informal discovery and negotiation by the opposing party, to hold the party performing in good faith to binding arbitration while the violator continues to use the same counsel but exposes to the other party only that information he or she is required by arbitration procedures to share, flouting the provisions of the collaborative law statute, depriving the opposing party of its protections and of access to the courts, and potentially calling into question the compliance of the attorney who continues representation of a party in arbitration after the failure of the "cooper-

ative law" proceedings with the provisions of Rules 1.06 and 1.07 of the Texas Disciplinary Rules of Professional Conduct, governing conflicts of interest. *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 1.06, 1.07, *reprinted in* TEX. GOV'T. CODE ANN., tit. 2, subtit. G app. A (Vernon 2005).

Because Texas expresses its public policy through its statutes, and the Texas Legislature has expressly stated its policy regarding the dissolution of marriage in section 1.101 of the Family Code; because it has expressly permitted the dissolution of a marriage using collaborative law procedures in section 6.603 of the Code, setting out mandatory provisions for the protection of parties to such agreements; because the dissolution of marriage through "cooperative law agreements," such as the Agreement between the parties in this case, is not expressly provided for in Chapter 6; and because that Agreement systematically strips the protections of Chapter 6 from the parties to it, I would hold that the Cooperative Law Dispute Agreement in this case is injurious to the public good and that it is, therefore, void and unenforceable as against public policy.

### Disqualification of Cooperative Law Counsel as Arbitration Counsel

Mary next argues that Keen, Gary's collaborative law attorney, must be disqualified from further participation in the dissolution of marriage proceedings because Keen's continued representation of Gary violates the Texas collaborative law statute and Texas public policy. I agree.

Courts are required to adhere to an exacting standard when considering motions to disqualify counsel in order to discourage the use of such motions as a dilatory trial tactic. *Spears v. Fourth Court of Appeals,* 797 S.W.2d 654, 656 (Tex.1990); *In re Seven–O Corp.,* 289 S.W.3d 384, 388

(Tex.App.-Waco 2009, orig. proceeding). The burden is on the movant to establish with specificity a violation, in most cases a violation of one or more disciplinary rules. *See Spears,* 797 S.W.2d at 656. However, the disciplinary rules are only guidelines, not controlling standards for attorney disqualification. *In re Seven–O Corp.,* 289 S.W.3d at 388.

Here, Keen was Gary's "cooperative law" counsel and, in that capacity, received all of the information from Mary that she would have received had the parties proceeded properly under the applicable collaborative law statute, section 6.603 of the Family Code. The Legislature's analysis of the purpose of the statute expressly contemplates that, in a collaborative law setting, "The parties agree to a full exchange of records and to jointly hire experts. If a settlement is not reached, the attorneys must withdraw and the parties then employ trial counsel." House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 1363, 77th Leg., R.S. (2001). The bill's analysis further states that the "collaborative law procedure (procedure) is a specified process, conducted under written agreement of the parties and their counsel, to reach a settlement agreement with minimal judicial intervention in a dissolution of marriage dispute or a suit affecting the parent-child relationship" and that "[t]he bill sets forth provisions for what the agreement must include." *Id.* The express language of section 6.603 mandates, *inter alia, "full and candid exchange of information between the parties and their attorneys [and] withdrawal of all counsel involved in the collaborative law procedure if the ... procedure does not result in settlement of the dispute ...."* TEX. FAM.CODE ANN. § 6.603(c) (emphasis added).

By continuing as Gary's counsel in binding arbitration proceedings, rather than

withdrawing, Gary's counsel clearly contravenes the stated policy of the State of Texas regarding attorneys who participate in informal marriage dissolution negotiations. *See id.* § 6.603(b) (expressly prohibiting counsel who has participated in collaborative law procedure from "serv[ing] as litigation counsel except to ask the court to approve the settlement agreement"), 6.603(c) (requiring collaborative law agreements to include provision for "withdrawal of all counsel involved in the collaborative law procedure if the collaborative law procedure does not result in settlement of the dispute").

The reasons for this policy seem clear. The collaborative law statute and the parties' "cooperative law agreement" both expressly contemplate "the full and candid exchange of information between the parties and their attorneys." If parties abide by these statutory and contractual provisions, it is at least arguable that they will produce information to the opposing party that ordinarily would be protected by the attorney client privilege. If that same counsel continues to represent the same client in arbitration proceedings, he will then have waived a privilege his client might otherwise be able to assert. If he has *not* made full and fair disclosure, he may well have violated the provisions of the "cooperative law" agreement. The different roles of the attorney representing parties in settlement negotiations based on "full and candid" disclosure of information and of the attorney representing his client in court set up the potential for a conflict

of interest or waiver of the client's privilege. *See* Tex. Disciplinary R. Prof'l Conduct 1.06, 1.07.[4]

I recognize that it is not inevitable that representation of a client in "cooperative law" or collaborative law proceedings followed by representation of that same client in litigation, or, as here, in subsequent binding arbitration, would lead to the conflicts of interest contemplated by Rules 1.06 and 1.07 of the Rules of Disciplinary Conduct. However, it is reasonable to infer that it is precisely to avoid the potential for such conflicts of interest arising upon the failure of settlement negotiations between opposing parties in the informal full disclosure setting of collaborative law proceedings that Texas's collaborative law statute expressly mandates that counsel in the collaborative law negotiations withdraw upon the failure of those negotiations.

I would hold that Keen is disqualified from representing Gary in on-going dissolution of marriage proceedings under the express public policy of the State of Texas.

### Submission of Dispute to Arbitration under the Cooperative Law Agreement

Mary also argues that the trial court clearly abused its discretion by requiring her to proceed to arbitration under an alternative dispute resolution agreement that fails to comply with Texas statutory law and is against public policy.

4. Rule 1.06 is the general rule on attorney conflicts of interest. It provides that, within limitations, a lawyer shall not represent "opposing parties to the same litigation" or any person if representation of that person "involves a substantially related matter in which that person's interests are materially and directly adverse to the interest of another client" or "reasonably appears to be or be-

come adversely limited by the lawyer's ... responsibilities to another client or to a third person...." Tex. Disciplinary R. Prof'l Conduct 1.06(a), (b), *reprinted in* Tex. Gov't. Code Ann., tit. 2, subtit. G app. A (Vernon 2005).

Rule 1.07 addresses conflicts of interest when an attorney acts as an intermediary. Tex. Disciplinary R. Prof'l Conduct 1.07(a).

A party attempting to compel arbitration must first establish that the dispute in question falls within the scope of a valid arbitration agreement. *J.M. Davidson, Inc. v. Webster,* 128 S.W.3d 223, 227 (Tex. 2003). If the other party resists arbitration, the court must determine whether a valid arbitration agreement exists. *Id.* If the court finds that the claim falls within the scope of a valid arbitration agreement, the court has no discretion but to compel arbitration. *Forest Oil Corp. v. McAllen,* 268 S.W.3d 51, 56 (Tex.2008).

While defenses attacking the validity of a contract as a whole and not specifically aimed at the agreement to arbitrate are for the arbitrator rather than the court, the presumption favoring arbitration arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *In re Morgan Stanley & Co.,* 293 S.W.3d 182, 185 (Tex.2009) (orig. proceeding). "[W]here the 'very existence of a contract' containing the relevant arbitration agreement is called into question, the ... courts have authority and responsibility to decide the matter." *In re Morgan Stanley,* 293 S.W.3d at 187 (quoting *Banc One Acceptance Corp. v. Hill,* 367 F.3d 426, 429 (5th Cir.2004)). Any claim that necessarily calls the existence of an agreement to arbitrate into question is a question for the court. *Id.* at 190.

In determining whether a valid agreement to arbitrate exists, courts generally apply ordinary state-law principles that govern the formation of contracts. *In re D. Wilson Const. Co,* 196 S.W.3d 774, 781 (Tex.2006); *J.M. Davidson,* 128 S.W.3d at 227–28; *see also First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 944, 115 S.Ct. 1920, 1924, 131 L.Ed.2d 985 (1995). Under Texas law, as with any contract, agreements to arbitrate are valid unless grounds exist at law or in equity for revocation of the agreement. *In re Poly–America, L.P.,* 262 S.W.3d 337, 348 (Tex.2008). "The burden of proving such a ground—such as fraud, unconscionability or voidness under public policy—falls on the party opposing the contract." *Id.* A trial court's determination regarding the validity of an arbitration agreement is a legal question subject to de novo review. *Forest Oil Corp.,* 268 S.W.3d at 55 & n. 9; *J.M. Davidson,* 128 S.W.3d at 227.

Here, Chapter 6 of the Family Code provides that a court shall "refer a suit for dissolution of marriage to arbitration" upon the "written agreement of the parties." TEX. FAM.CODE ANN. § 6.601 (Vernon 2006). The provision presumes, however, that the parties' agreement is a valid agreement to arbitrate under Texas law. The arbitration provision in the Agreement is clearly expressed to be the end result of the "cooperative law" process in the event the parties do not reach a settlement, rather than a separate agreement to arbitrate as provided for in Family Code section 6.601. *See id.* § 6.601.

By providing for binding arbitration *in advance* of collaborative settlement negotiations should those negotiations fail and by failing to permit voluntary withdrawal from the "cooperative law agreement," the Agreement directly contravenes intent of the Legislature that such proceedings shall be voluntary and withdrawal shall be permitted at any time. The final House Bill Analysis statement of purpose expressly states, "The collaborative law process offers parties the option to negotiate in good faith for an out-of-court settlement. The process is entirely voluntary and participation may be terminated at any time." House Comm. on Civil Practices, Bill Analysis, Tex. H.B. 1363, 77th Leg., R.S. (2001).

The arbitration clause also contravenes subsection 6.603(f) of the collaborative law

statute, which requires that in the event collaborative law procedures do not result in a settlement, the parties shall file . . . a status report with the court not later than the 180th day after the date of the written agreement to use the procedures. . . . TEX. FAM.CODE ANN. 6.603(f)(1). The clause also contravenes subsection 6.603(g), which requires that if the collaborative law procedures do not result in settlement by the second anniversary of the date suit was filed, the court may set the suit for trial on the regular docket or dismiss it. *Id.* 6.603(g).

Finally, the collaborative law statute provides that the parties counsel may not participate in litigation except to seek court approval of any settlement agreement and must withdraw if the proceedings fail. *Id.* 6.603(b), (c)(4). Necessarily, counsel who have participated in informal collaborative settlement negotiations may not appear in court and request an order sending the parties to binding arbitration, much less binding arbitration in which the same counsel will continue to represent the parties following failure of the settlement negotiations.

The parties cooperative law agreement intentionally avoids the provisions for court supervision of settlement negotiations and denies recourse to the courts to a party to the Agreement if the other party fails to participate in the negotiations in good faith, sending them to binding arbitration instead. In addition, the arbitration provision is intended to apply even if, as here, one of the parties continues to be represented by the same counsel who represented that party in the settlement negotiations, contravening the letter and intent of the public policy of Texas as stated in

sections 1.101 and 6.603 of the Family Code.

Thus, even if I had not concluded that the entire Agreement was void, I would hold that the inclusion of an arbitration provision in the parties cooperative law agreement violates the letter and the spirit of sections 1.101 and 6.603 of the Family Code and that the provision is void an unenforceable as against the public policy of the State of Texas.[5] *See In re Poly-America*, 262 S.W.3d at 348 (holding that agreements to arbitrate are valid unless grounds exist at law or in equity for revocation, including voidness under public policy).

### Conclusion

For all the foregoing reasons, I cannot agree with the majority's conclusion that a private marriage dissolution contract not authorized by Chapter 6 of the Family Code is valid and enforceable, the necessary implication being that parties who do not wish to follow Texas's statutory provisions for dissolving a marriage do not have to do so, a holding that contradicts both the plain language and the intent of section 1.101 of the Family Code regarding the public policy of the State of Texas with respect to marriage. Nor do I agree with the notion that parties may inextricably intertwine valid procedures for voiding a marriage, such as arbitration clauses, into illegal marriage dissolution contracts, validating the illegal provisions or avoiding their taint.

I would hold that the public policy of the State of Texas as expressed in sections 1.101, 6.601, and 6.603 of the Family Code clearly prohibits Texas state courts from recognizing as a valid method for dissolving a marriage a private agreement that

---

5. Because I would hold that the arbitration agreement is void, I would also hold that Mary's fourth issue, contending that even if

formerly enforceable, the arbitration agreement is no longer enforceable, is moot.

Chapter 6 of the Family Code does not recognize as a means of making a marriage void, and that it prohibits intertwining statutorily valid and invalid procedures regarding the dissolution of marriage to avoid the protections of law.

I would hold that both the parties' Cooperative Law Dispute Resolution Agreement and the arbitration provisions integral to it are contrary to the public policy of the State and void. I would further hold that the trial court abused its discretion by enforcing the parties' Cooperative Dispute Resolution Agreement, by denying Mary's motions to disqualify Keen as counsel in the divorce proceedings, and by ordering Mary to arbitrate her claims as provided in the Agreement.

I would provisionally **grant** the petition for writ of mandamus. I would, therefore, remand the case to the trial court for further proceedings consistent with this opinion and with sections 1.101 and 6.603 of the Family Code.