**Opinion issued June 25, 2013.**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-11-00563-CV

———————————

**FORGED COMPONENTS, INC., Appellant**

**V.**

**RICKY GUZMAN, Appellee**

---

**On Appeal from the 55th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2008-46435**

---

## O P I N I O N

This is a case about competing arbitration agreements. Appellee, Ricky Guzman, sued his employer, Forged Components, Inc. (FCI), for negligence after he suffered an on-the-job injury. The trial court denied FCI's motion to compel

arbitration under an arbitration provision in FCI's Occupational Disease and Injury Employee Welfare Benefit Plan (Plan), which Guzman signed before becoming an FCI employee. But it later granted Guzman's motion to compel arbitration under a Rule 11 agreement the parties' attorneys signed while the lawsuit was pending.

The arbitrator issued an award in Guzman's favor, and the trial court entered judgment on the award and added an award of post-judgment interest. On appeal, FCI complains that the trial court erred by (1) denying FCI's motion to compel arbitration under the arbitration agreement in the Plan, (2) compelling arbitration under the Rule 11 agreement, (3) refusing to vacate the award, and (4) awarding post-judgment interest. In his sole cross-point, Guzman asserts that the trial court erred in failing to award pre-judgment interest.

We modify the trial court's judgment to exclude the award of post-judgment interest and affirm as modified.

**Background**

Guzman was pinned by a forklift at work. He underwent surgery and was hospitalized for twenty-seven days. On August 4, 2008, Guzman sued FCI, his employer and a non-subscriber under the Texas Workers' Compensation Statute, for negligence. FCI generally denied Guzman's allegations and asserted that Guzman's intoxication caused the accident. *See* TEX. LAB. CODE § 406.033(c)(2) (West Supp. 2012).

2

In September 2009, after the case had been removed, remanded, and appealed to the Fifth Circuit, FCI moved to compel arbitration under the terms of the Plan. Section 11 of the Plan states:

> AGREEMENT TO ARBITRATE: In the event there is any dispute arising out of any work related Accident or Occurrence, or any claim for or regarding benefits under this Plan . . . the Covered Employee and the Company agree to submit all such disputes exclusively to final and binding arbitration. Arbitration shall be conducted pursuant to these procedures and the provisions of the Federal Arbitration Act. . . .

Guzman opposed FCI's motion, contending that his negligence claim fell outside the scope of the Plan's arbitration agreement. He also argued that the Plan's arbitration procedures were unconscionable and rendered the agreement unenforceable.

The trial court held a hearing on FCI's motion and, on November 12, 2009, entered an order denying the motion. FCI contends it did not receive notice of the trial court's ruling until March 2010, because the order was mailed to the wrong address. But on November 18, 2009, six days after the trial court denied FCI's motion, FCI's counsel faxed Guzman's counsel the following proposed Rule 11 agreement:

> This will serve as the agreement between Plaintiff and Defendant pursuant to TRCP 11 to abate the above-referenced matter and submit this dispute to binding arbitration before Judge Katie Kennedy of Judicial Workplace Arbitrations. If this correctly sets out our agreement, please sign where provided below and return your signature to me.

3

On the same day, Guzman's attorney signed the Rule 11 agreement and penned the following handwritten note next to his signature:

By agreeing to arbitrate w[ith] Judge Kennedy, Plaintiff is not agreeing to be bound by the terms of the [F]orged [C]omponents Arbitration Plan which Plaintiff has previously contested both in his Response to Defendant's Motion to Compel Arbitration and Plaintiff Counsel's letter dated Oct. 28, 2009.

Guzman's counsel returned the signed Rule 11 agreement with his handwritten notation to FCI's counsel, who filed the Rule 11 agreement in the trial court on December 7, 2009. That same day, FCI's counsel's assistant sent a copy of the Rule 11 agreement to Guzman's counsel under a cover letter stating: "Enclosed please find the Rule 11 agreement regarding arbitration that was filed with the Court today."

After an unsuccessful mediation in December 2009, Guzman's counsel wrote FCI's counsel on January 5, 2010: "As you are aware we agreed to arbitrate this matter with Katie Kennedy through Judicial Workplace Arbitrations. I would like to set up the arbitration with JWA and see if we can agree on an Arbitration Plan. Please call me as soon as possible so we can begin working out these details." On January 27, 2010, Guzman's counsel sent a letter to JWA, copying FCI's counsel. The letter informed JWA of the parties' agreement to arbitrate the matter with former district court judge Kennedy through JWA, requested that a scheduling conference be set as soon as possible, and enclosed the parties' live

4

pleadings, the Rule 11 agreement, and documents identifying each party's witnesses.

On March 10, 2010, FCI filed a "Notice of Revocation of Consent to Proposed Rule 11 Agreement." In it, FCI asserted that "Plaintiff's return of the [Rule 11] with altered terms [i.e., Guzman's counsel's handwritten notation] was a mere counter-offer. Therefore, no enforceable Rule 11 agreement existed." FCI separately advised Guzman that FCI did not intend to arbitrate and served Guzman with a deposition notice and written discovery.

On March 24, 2010, Guzman moved to enforce the Rule 11 agreement, abate the case, and compel arbitration. In response, FCI argued that no Rule 11 agreement was formed, and that, even if one had been formed, FCI had withdrawn its consent to arbitrate, and Guzman had waived his right to arbitrate by opposing arbitration under the Plan. The trial court granted Guzman's motion to compel arbitration under the Rule 11 agreement.

The parties arbitrated the dispute before Katie Kennedy, who awarded Guzman damages in the amount of $1,312,518.23. Guzman moved to confirm the award and for entry of judgment, and FCI moved to vacate the award. On June 13, 2011, the trial court entered judgment awarding Guzman $1,312,518.23 in damages, plus post-judgment interest and taxable costs. FCI appeals.

**Which law governs?**

5

Before turning to the merits, we address the parties' threshold choice-of-law dispute. The parties agree that the Federal Arbitration Act (FAA) governs the arbitration agreement in the Plan,[1] but they disagree about which law governs the Rule 11 arbitration agreement. FCI contends that because the Rule 11 agreement does not expressly invoke the FAA and does not involve interstate commerce, the FAA is inapplicable, and the Texas Arbitration Act (TAA) alone governs. It further argues that the Rule 11 agreement is unenforceable because it does not meet the TAA's requirement that it be signed by the parties and their counsel. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 171.002(a)(3), (c)(2) (West 2011). Guzman argues that the FAA applies to the Rule 11 arbitration agreement and renders irrelevant the TAA's requirement that an arbitration agreement be signed by the parties.

The FAA applies to an arbitration agreement arising out of a contract evidencing a transaction involving commerce. *See* 9 U.S.C.S § 2 (Lexis Nexis 2008). Therefore, if the employment relationship between FCI and Guzman

---

[1] Courts apply the FAA when the parties' arbitration agreement expressly invokes it. *See, e.g.*, *In re Kellogg Brown & Root*, 80 S.W.3d 611, 617 (Tex. App.—Houston [1st Dist.] 2002, orig. proceeding) (upholding choice-of-law provision when there is express agreement to arbitrate under FAA); *see also In re Pham*, 314 S.W.3d 520, 526 (Tex. App.—Houston [14th Dist.] 2010, pet. struck) (same). Here, the Plan states that "[a]rbitration shall be conducted pursuant to these procedures and the provisions of the Federal Arbitration Act . . . ."

involves "commerce," as defined in section 2, then the FAA governs the arbitration agreement. *See id.*

The United States Supreme Court has interpreted the term "involving commerce" in the FAA "as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56, 123 S. Ct. 2037, 2040 (2003) (per curiam); *see also In re L & L Kempwood Assocs., L.P.*, 9 S.W.3d 125, 127 (Tex. 1999) (per curiam) (the provision of the FAA that makes enforceable a written arbitration provision in "'a contract evidencing a transaction involving commerce' extends to any contract affecting commerce, as far as the Commerce Clause of the United States Constitution will reach").

In the employment context, the "relationship between an employer who is regularly engaged in activities related to interstate commerce and its employees is affected by interstate commerce as a matter of law and implicates commerce clause issues." *In re Big 8 Food Stores, Ltd.*, 166 S.W.3d 869, 880 (Tex. App.—El Paso 2005, orig. proceeding). Whether the FAA governs the Rule 11 arbitration agreement thus turns on whether FCI is regularly engaged in activities related to interstate commerce. The record demonstrates that FCI manufactures steel, primarily for the oil and gas industry. In general, FCI takes raw bar steel, then

7

forges and machines it into finished product. FCI's head office is in Humble, Texas, and it has a sales office in Canada, meaning that FCI, at a minimum, engages in trade, commerce, or communication between Texas and Canada. *See Robinson v. TCI/US West Commc'ns Inc.*, 117 F.3d 900, 904 (5th Cir. 1997) (noting interstate commerce includes "trade, commerce, transportation, or communication . . . between any foreign country and any . . . place or ship outside thereof"). Based on these facts, and the fact that FCI does not dispute that it regularly engaged in activities related to interstate commerce, we conclude that the relationship between Guzman and FCI involves interstate commerce such that the FAA applies to the arbitration provision in the Rule 11 agreement. *See In re Border Steel, Inc.*, 229 S.W.3d 825, 830–31 (Tex. App.—El Paso 2007, orig. proceeding [mand. denied]) (holding that relationship between employer and employee "unquestionably affected interstate commerce" when employer recruited and advertised outside Texas, purchased goods and services from other states, and served customers in various states); *see also In re Big 8 Food Stores*, 166 S.W.3d at 879–80 (holding that FAA applied to arbitration agreement between employer and employee when employer purchased goods, served customers, and advertised outside of Texas).

Because the FAA preempts inconsistent state law—including the TAA provision that requires parties to sign an arbitration agreement—we hold that the

TAA provision relied on by FCI does not bar enforcement of the arbitration agreement in the Rule 11 agreement, as FCI contends. *See Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (FAA preempts all otherwise applicable inconsistent state laws, including any inconsistent provisions of the TAA, under the Supremacy Clause of the United States Constitution); *see also In re Nexion Health at Humble, Inc.*, 173 S.W.3d 67, 68 (Tex. 2005) (because provision of TAA requiring additional signature on arbitration agreement was preempted by FAA, signature was not a prerequisite to enforcement of arbitration agreement). Having decided that the FAA governs both arbitration agreements, we consider the merits of FCI's appeal.

### Did the trial court commit reversible error by refusing to compel arbitration under the Plan and compelling arbitration under the Rule 11 agreement?

A party seeking to compel arbitration under the FAA must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005) (orig. proceeding); *In re Provine*, 312 S.W.3d 824, 828 (Tex. App.—Houston [1st Dist.] 2009, orig. proceeding). Generally speaking, we review the trial court's denial of a motion to compel arbitration for abuse of discretion. *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 38 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). However, "[w]hen an appeal from a denial of a motion to compel arbitration turns on a legal determination . . . we

9

apply a de novo standard." *Forest Oil Corp. v. McAllen*, 268 S.W.3d 51, 55 n.9 (Tex. 2008). Here, FCI challenges the trial court's rulings on both motions to compel arbitration. We address each in turn.

## A. Order denying FCI's motion to compel arbitration under the Plan

In its third issue, FCI complains that the trial court erred in denying its motion to compel arbitration under the Plan. It contends that Guzman's claim is within the scope of the Plan's arbitration agreement, and that, if the trial court found any provision of the agreement unconscionable, the express terms of the agreement required that the unenforceable provision be severed and the remaining provisions enforced. Guzman contends FCI waived this complaint by entering into the Rule 11 agreement, and that any error in denying FCI's motion to compel was harmless because the parties ultimately arbitrated Guzman's claim anyway.

We agree with Guzman that, under these circumstances, the trial court's error in denying FCI's motion to compel, if any, was harmless. FCI was not deprived of its bargained-for right to have Guzman's claim submitted to arbitration—his claim ultimately was arbitrated. FCI argues that it should have been afforded the right to arbitrate according to the arbitration procedures set forth in the Plan. But it points to only one aspect in which it purportedly was harmed by the failure of the arbitrator to adopt the Plan's procedures.

10

FCI contends that, under the Plan's procedures, Guzman would have been limited to three four-hour depositions. However, as Guzman points out, the Plan expressly permitted the arbitrator to grant the parties leave to take additional depositions and exceed the four-hour time limit. Put differently, Guzman could have exceeded the limits on depositions even if the Plan's arbitration provision had been enforced. And FCI does not contend that the fact that Guzman was not limited to three four-hour depositions caused the rendition of an improper judgment. *See Texas La Fiesta Auto Sales, LLC v. Belk*, 349 S.W.3d 872, 884–85 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (affirming order compelling arbitration when appellants could not show that compelling arbitration under one of two agreements prejudiced them or caused the rendition of an improper judgment). Accordingly, we hold that, under these circumstances, FCI failed to demonstrate that the trial court's error in denying its motion to compel, if any, probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a); *Texas La Fiesta Auto Sales*, 349 S.W.3d at 884–85.

We overrule FCI's third issue.

## B.     Order granting Guzman's motion to compel arbitration under the Rule 11 agreement

In its fourth issue, FCI contends that the trial court erred in enforcing the Rule 11 agreement to arbitrate Guzman's claims because (1) there was no valid offer and acceptance or meeting of the minds, (2) even if there was, FCI revoked

11

its consent, and (3) Guzman waived his right to arbitrate. We address each contention in turn.

1. *Was there an enforceable Rule 11 agreement to arbitrate Guzman's claims?*

A party seeking to compel arbitration under the FAA must establish (1) the existence of a valid, enforceable arbitration agreement and (2) that the claims at issue fall within that agreement's scope. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737; *In re Provine*, 312 S.W.3d at 828. There is a strong presumption favoring arbitration but this presumption only arises after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d at 737. "[A]n arbitration agreement does not have to assume any particular form, but the language of the agreement must clearly indicate the intent to arbitrate." *Wachovia Secs., LLC v. Emery*, 186 S.W.3d 107, 113 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

In determining the validity of arbitration agreements under the FAA, we generally apply state-law principles governing the formation of contracts. *See In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 676 (Tex. 2006) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944, 115 S. Ct. 1920, 1924 (1995)). Under Texas contract law, a legally enforceable contract consists of "(1) an offer, (2) an acceptance, (3) a meeting of minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be

mutual and binding." *Prime Prods., Inc. v. S.S.I. Plastics, Inc.*, 97 S.W.3d 631, 636 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *Parker Drilling Co. v. Romfor Supply Co.*, 316 S.W.3d 68, 72 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) (same, but describing second element as "acceptance *in strict compliance with the terms of the offer*" (emphasis added)); *see also* TEX. R. CIV. P. 11 (to be enforceable, agreements between attorneys touching any suit pending must be in writing, signed, and filed with the papers as part of the record, unless it is made in open court and entered of record). "Whether the parties reached an agreement is a question of fact." *Parker Drilling Co.*, 316 S.W.3d at 72.

Here, the parties dispute whether Guzman's counsel's return of the signed Rule 11 agreement with his handwritten note constituted an acceptance of FCI's offer or, as FCI contends, a rejection and counteroffer. "A purported acceptance that changes or qualifies an offer's material terms constitutes a rejection and counter offer rather than an acceptance." *Id.* at 74. Contracts must be examined on a case-by-case basis to determine which terms are material or essential. *Id.* (citing *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 221 (Tex. 1992)). Our determination of whether there was a valid offer and acceptance is based on the objective standard of what the parties said and did and not on their subjective state of mind. *Baroid Equip., Inc. v. Odeco Drilling, Inc.*, 184 S.W.3d 1, 17 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

13

"Unless otherwise indicated, an offer may be accepted in any manner reasonable under the circumstances." *Horton v. DaimlerChrysler Fin. Servs. Ams., L.L.C.*, 262 S.W.3d 1, 6 (Tex. App.—Texarkana 2008, no pet.) (*citing* RESTATEMENT (SECOND) OF CONTRACTS § 30 (1981)). The mode of expressing assent is inconsequential as long as it effectively makes known to the offeror that his offer has been accepted. *Id.* (citing *Fujimoto v. Rio Grande Pickle Co.*, 414 F.2d 648, 652 (5th Cir. 1969). A party may show acceptance through conduct. *Id.*

In response to FCI's contention that Guzman's counsel's addition of the handwritten note qualified a material term of FCI's offer and, thus, constituted a rejection and counteroffer, Guzman argues that the handwritten note merely clarified, but did not materially alter, the terms of FCI's offer. Therefore, Guzman claims, his counsel's return of the signed Rule 11 offer constituted a valid acceptance. Alternatively, Guzman argues that, if his counsel's inclusion of the handwritten note constituted a counteroffer and not an acceptance, FCI's subsequent conduct demonstrates that it accepted the counteroffer.

We agree with Guzman. The two material terms of FCI's offer were: (1) abatement of the lawsuit, and (2) submission of the dispute to binding arbitration with Katie Kennedy.[2] The agreement FCI proposed did not state whether FCI

---

[2] The agreement proposed by FCI stated:

14

intended for the Plan's procedures to apply in the proposed arbitration. Guzman's counsel, perhaps appreciating this ambiguity, clarified with his handwritten note that it was his intent that the Plan's procedures would not apply. We conclude that even if his clarification constituted a rejection and counteroffer—a question we do not decide—FCI's subsequent, objective acts manifested FCI's intent to accept and be bound by Guzman's terms. FCI's counsel received the signed Rule 11 agreement with the handwritten clarification, filed it with the trial court, and then confirmed the filing in a letter to Guzman's counsel that same day, enclosing a file-stamped copy of the agreement. FCI later filed a notice purporting to "revok[e]" its consent to the Rule 11 agreement, further underscoring that it agreed to its terms at an earlier point in time. Based on FCI's objective acts, we conclude the record supports the trial court's implied finding that the parties formed an enforceable

---

This will serve as the agreement between Plaintiff and Defendant pursuant to TRCP 11 to abate the above-referenced matter and submit this dispute to binding arbitration before Judge Katie Kennedy of Judicial Workplace Arbitrations. If this correctly sets out our agreement, please sign where provided below and return your signature to me.

Guzman's attorney signed in the space provided and handwrote the following note next to his signature:

by agreeing to arbitrate w [sic] Judge Kennedy, Plaintiff is not agreeing to be bound by the terms of the [F]orged [C]omponents Arbitration Plan which Plaintiff has previously contested both in his Response to Defendant's Motion to Compel Arbitration and Plaintiff Counsel's letter dated Oct. 28, 2009.

15

Rule 11 agreement to arbitrate Guzman's claim. *See Baroid Equip., Inc.*, 184 S.W.3d at 17 (whether there was a valid offer and acceptance is based on the objective standard of what the parties said and did and not on their subjective state of mind).

> 2. *Did FCI revoke its consent to arbitrate under the Rule 11 agreement?*

FCI next argues that the trial court erred in enforcing the Rule 11 agreement because FCI revoked its consent. The Texas Supreme Court repeatedly has held that an agreed judgment rendered after one of the parties revokes his consent is void. *See S & A Rest. Corp. v. Leal*, 892 S.W.2d 855 (Tex. 1995) (per curiam); *Quintero v. Jim Walter Reed Homes, Inc.*, 654 S.W.2d 442 (Tex. 1983). But it also made clear in *Padilla* that this does not preclude enforcement of Rule 11 settlement agreements. *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995). And this Court has held that the rule applies only to agreed judgments, not to agreements to arbitrate. *See In re Mabray*, 355 S.W.3d 16, 32 (Tex. App.—Houston [1st Dist.] 2010, orig. proceeding [mand. denied]) (holding trial court did not abuse its discretion in denying motion to revoke consent to arbitration agreement).

In *Mabray*, a divorcing husband and wife agreed to submit their divorce dispute to binding arbitration if the case had not been settled by negotiation before a certain date. 355 S.W.3d at 20. The wife later sought to revoke her consent to the arbitration agreement. *Id.* at 21. This court affirmed the trial court's denial of

16

the wife's motion to revoke consent. *Id.* at 32. We explained: "The arbitration process, more than likely, will lead to a judgment that at least one of the parties does not agree to, just as the judgment following a trial would. This does not mean that a party can revoke her 'consent' to it." *Id.* Following *Mabray*, we conclude that the trial court did not err in rejecting FCI's assertion that the Rule 11 agreement was unenforceable because FCI had revoked its consent.

### 3. *Did Guzman waive his right to arbitrate?*

FCI argues that, even if the Rule 11 agreement was enforceable at one time, Guzman waived his right to arbitrate by invoking the litigation process to FCI's detriment and by taking inconsistent positions on arbitration, i.e., opposing arbitration under the Plan and then requesting arbitration under the Rule 11 agreement.

The Texas Supreme Court has articulated the test for determining whether a party has waived his right to arbitration: the question is whether the party moving for arbitration "has substantially invoked the judicial process to an opponent's detriment, the latter term meaning inherent unfairness caused by 'a party's attempt to have it both ways by switching between litigation and arbitration.'" *In re Citigroup Global Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (quoting *Perry Homes v. Cull*, 258 S.W.3d 580, 597 (Tex. 2008)). Waiver may be express or implied. *See EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996) (per

curiam). But there is a strong presumption against finding that a party has waived its right to arbitration. *In re D. Wilson Constr. Co.*, 196 S.W.3d 774, 783 (Tex. 2006). The burden to prove waiver is thus a heavy one. *See id.* Any doubts regarding waiver are resolved in favor of arbitration. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 705 (Tex. 1998) (per curiam).

The Texas Supreme Court found waiver of the right to arbitrate in *Perry Homes*. *Perry Homes*, 258 S.W.3d at 584. In that case, the plaintiffs initially "vigorously opposed" the defendants' motion for arbitration but then, after fourteen months of litigation, when discovery was nearly complete and the case was set for trial, they moved to compel arbitration under the same agreement they had previously resisted. *Id.* at 585. The trial court granted the motion four days before the trial date. *Id.* The Texas Supreme Court found waiver, set aside the arbitration award, and remanded the case for trial. *Id.* at 601.

Here, FCI argues that Guzman waived the right to arbitrate by opposing arbitration under the Plan and availing himself of the litigation process for nineteen months before moving to compel arbitration under the Rule 11 agreement. Guzman certainly opposed arbitration under the Plan, but, unlike the plaintiff in *Perry Homes*, he never reversed course and sought to enforce the very arbitration agreement he previously opposed.

Indeed, here, the agreement to arbitrate that Guzman sought to enforce only came into existence on November 18, 2009, some fifteen months after Guzman filed suit. Guzman could not have waived the right to arbitrate under the Rule 11 agreement before it came into existence. *See Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam) ("Waiver is defined as 'an intentional relinquishment of a *known* right . . . .'") (emphasis added); *Furmanite Worldwide, Inc. v. Nextcorp, Ltd.*, 339 S.W.3d 326, 334 (Tex. App.—Dallas 2011, no pet.) (noting elements of waiver are: "(1) an *existing* right, benefit, or advantage; (2) knowledge, actual or constructive, of its existence; and (3) an actual intent to relinquish the right (which can be inferred from conduct)") (emphasis added).

Guzman's conduct after the Rule 11 agreement came into existence does not demonstrate waiver. Guzman moved to compel arbitration under the Rule 11 agreement four months after it was signed.[3] Additionally, the record does not reflect that Guzman substantially invoked the litigation process during that time. Rather, the parties mediated in December 2009, and Guzman's counsel began the process of initiating the arbitration (by informing JWA of the dispute) in January 2010. Guzman's counsel requested the depositions of several FCI witnesses in early 2010, but this was not necessarily inconsistent with arbitration and, in any

---

[3] We observe that a far longer delay was occasioned by FCI's removal and appeal from the remand order, which ultimately was dismissed in June 2009 for FCI's failure to file an appellate brief.

19

event, this conduct is insufficient to establish waiver. *Cf. Perry Homes*, 258 S.W.3d at 601. We conclude that Guzman did not substantially invoke the judicial process to FCI's detriment before seeking to enforce the Rule 11 arbitration agreement, and, accordingly, we hold Guzman did not waive his right to arbitrate under that agreement.

Having concluded that the trial court did not err in enforcing the parties' Rule 11 agreement to arbitrate Guzman's claims, we overrule FCI's fourth issue.

## Did the trial court err in denying FCI's motion to vacate?

We review de novo a trial court's confirmation of an arbitration award, recognizing that the statutory grounds for vacatur under the FAA are limited. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584, 128 S. Ct. 1396, 1403 (2008); *Statewide Remodeling, Inc. v. Williams*, 244 S.W.3d 564, 567–68 (Tex. App.—Dallas 2008, no pet.). "All reasonable presumptions are indulged to uphold the arbitrator's decision, and none are indulged against it." *Royce Homes, L.P. v. Bates*, 315 S.W.3d 77, 85 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Bailey & Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex. App.—Dallas 1987, writ ref'd n.r.e.)).

An arbitration award is presumed valid and entitled to great deference. *Royce Homes*, 315 S.W.3d at 85. Because judicial review of an arbitration award adds expense and delay that diminishes the benefits of arbitration as an efficient,

20

economical system for resolving disputes, our review of the arbitration award is extraordinarily narrow. *Id.* at 85–86 (citing *Myer v. Americo Life, Inc.*, 232 S.W.3d 401, 407–08 (Tex. App.—Dallas 2007, no pet.)). We may not vacate an award even if it is based upon a mistake in law or fact. *Id.* at 86. Rather, under the FAA, an arbitration award may be vacated only if: (1) the award was procured by corruption, fraud, or undue means; (2) there was evident partiality or corruption in the arbitrators; (3) the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or (4) the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. 9 U.S.C.S § 10(a). The Supreme Court has held that these statutory grounds are the exclusive grounds for vacating an arbitration award. *Hall St. Assocs.*, 552 U.S. at 584, 128 S. Ct. at 1403.

In its first issue, FCI argues that the trial court erred in entering judgment on the arbitration award. It contends its motion to vacate should have been granted because (1) the arbitrator exceeded her powers by conducting the arbitration using procedures other than those set forth in the Plan and (2) the award is tainted by the arbitrator's refusal to hear and consider material evidence. We address each complaint in turn.

21

**A.** **Did the arbitrator exceed her powers by using procedures other than those set forth in the Plan?**

An arbitrator's authority to decide a dispute is derived from the arbitration agreement. *Kosty v. S. Shore Harbour Cmty. Ass'n, Inc.*, 226 S.W.3d 459, 465 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). The scope of an arbitrator's authority depends on the arbitration agreement. *J.J. Gregory Gourmet Servs., Inc. v. Antone's Imp. Co.*, 927 S.W.2d 31, 35 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (citing *Gulf Oil Corp. v. Guidry*, 327 S.W.2d 406, 408 (1959)); *see also Apache Bohai Corp. LDC v. Texaco China BV*, 480 F.3d 397, 401 (5th Cir. 2007); *Brook v. Peak Int'l*, 294 F.3d 668, 672 (5th Cir. 2002).

Arbitrators exceed their powers when they decide matters not properly before them. *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 829 (Tex. App.—Dallas 2009, no pet.). But "[i]t is only when the arbitrator departs from the agreement, and, in effect, dispenses his own idea of justice that the award may be unenforceable." *Centex/Vestal v. Friendship W. Baptist Church*, 314 S.W.3d 677, 684 (Tex. App.—Dallas 2010, pet. denied) (citing *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509, 121 S. Ct. 1724, 1728 (2001)). "To determine whether an arbitrator exceeded his powers, we must examine the language in the arbitration agreement." *Allstyle Coil Co., L.P. v. Carreon*, 295 S.W.3d 42, 44 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (quoting *Glover v. IBP, Inc.*, 334 F.3d 471, 474 (5th Cir. 2003)); *see Rapid*

*Settlements, Ltd. v. Green*, 294 S.W.3d 701, 707 (Tex. App.—Houston [1st Dist.] 2009, no pet.) (arbitrator exceeded his powers in issuing award against party not subject to arbitration).

The Rule 11 agreement provided that the parties would submit their dispute to binding arbitration before Katie Kennedy. With respect to procedures to be used in the arbitration, however, it said only that the parties did not agree to use those set forth in the Plan. FCI does not contend that that the arbitrator exceeded her authority by departing from the terms of the Rule 11 agreement and dispensing her own idea of justice, nor does it contend that the arbitrator adjudicated a claim outside the scope of the agreement or purported to bind a party not subject to arbitration. *See Centex/Vestal*, 314 S.W.3d at 684 (award may be unenforceable if arbitrator departs from agreement); *Rapid Settlements*, 294 S.W.3d at 707 (arbitrator exceeded his powers in issuing award against party not subject to arbitration). Instead, FCI merely repackaged its complaint about the trial court's ruling compelling arbitration under the Rule 11 agreement, as opposed to the Plan, as an "arbitrator exceeded her powers" argument. We conclude that FCI failed to demonstrate that the arbitrator exceeded her authority by failing to apply the Plan's procedures. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S. Ct. 909, 918 (1964) ("Once it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which

23

grow out of the dispute and bear on its final disposition should be left to the arbitrator."); *PaineWebber Inc. v. Elahi*, 87 F.3d 589, 599 (1st Cir. 1996) ("Thus, if the parties have (1) entered into a valid arbitration agreement . . . , and (2) the arbitration agreement covers the subject matter of the underlying dispute between them . . . , then we will presume that the parties have made a commitment to have an arbitrator decide all the remaining issues necessary to reach a decision on the merits of the dispute. Put differently, the signing of a valid arbitration agreement to arbitrate the merits of a subject matter in dispute presumptively pushes the parties across the 'arbitrability' threshold; we will then presume that other issues relating to the substance of the dispute or the procedures of arbitration are for the arbitrator.").

## B.    Did the arbitrator commit a gross mistake?

FCI next argues that the award should be vacated because the arbitrator committed a gross mistake insofar as she ignored material evidence of Guzman's intoxication at the time of the accident. Specifically, FCI contends that, because Guzman testified positive for controlled substances after his injury, there is a rebuttable presumption under the Texas Labor Code that Guzman was intoxicated and did not have the normal use of mental or physical faculties at the time of his injury. *See* TEX. LAB. CODE. ANN. § 401.013 (West 2006) ("On the voluntary introduction into the body of [a controlled substance], based on a blood test or urinalysis,

24

it is a rebuttable presumption that a person is intoxicated and does not have the normal use of mental or physical faculties."). According to FCI, the arbitrator improperly ignored the urinalysis results and excused Guzman from having to adduce evidence to rebut this presumption.

There is no suggestion in the record that the arbitrator refused to hear any evidence or otherwise engaged in misconduct warranting vacatur under 9 U.S.C.S § 10(a)(3). Indeed, as Guzman argues, the record demonstrates that the arbitrator heard both parties' evidence on the intoxication issue, including Guzman's expert's testimony that the urinalysis results demonstrated that Guzman was not intoxicated at the time, and made the factual determination that Guzman rebutted the presumption that he was intoxicated. Indeed, the arbitrator's award expressly states she concluded that Guzman's evidence rebutted the presumption. *See Tex. Mut. Ins. Co. v. Havard*, No. 01-07-00268-CV, 2008 WL 598347, at *4 (Tex. App.—Houston [1st Dist.] Mar. 6, 2008, no pet.) (mem. op.) (finding that truck driver rebutted presumption of intoxication created by positive urine test, in part, by presenting expert testimony that test did not prove driver was suffering from effects of cocaine at time of accident). FCI's complaint, at bottom, is that this issue, on which there was conflicting evidence, was resolved adversely to him.

But the claim that the arbitrator "ignore[d] . . . the rebuttable presumption of intoxication" finds no support in the record.[4]

We conclude that the trial court did not err in refusing to vacate the arbitration award, and we overrule FCI's first issue.

**Is Guzman entitled to pre- and post-judgment interest?**

In its second issue, FCI argues the trial court erred in awarding post-judgment interest when the arbitrator made no such award. In his sole issue in his cross-appeal, Guzman contends the trial court erred in also failing to award pre-judgment interest. We agree with FCI that Guzman is not entitled to either.

A trial court has limited powers to modify an arbitrator's award. *See* 9 U.S.C. § 11. This Court has held that neither the FAA nor the Texas Finance Code authorizes an award of pre- or post-judgment interest whern the arbitrator made no such award. *See Fogal v. Stature Const., Inc.*, 294 S.W.3d 708, 722 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (prevailing party in arbitration is not entitled

---

[4]      Moreover, vacatur would be inappropriate even if the arbitrator erroneously applied the law, as FCI contends. *See Hall St. Assocs., L.L.C.*, 552 U.S. at 585, 128 S. Ct. at 1404 (rejecting notion that arbitrator's "manifest disregard of the law" expanded the grounds for vacatur beyond those enumerated in FAA); *see also Allstyle Coil Co.*, 295 S.W.3d at 44. Because statutory grounds are the exclusive means for vacatur under the FAA, FCI's argument that the arbitrator misapplied the presumption set forth in the Texas Labor Code, even if true, would not warrant vacatur. *See Royce Homes,* 315 S.W.3d at 90 (manifest disregard for the law is not a basis for vacatur of arbitration award); *Allstyle Coil Co.*, 295 S.W.3d at 44 ("manifest disregard of the law as an independent, non-statutory ground for setting aside an award must be abandoned and rejected").

to pre- or post-judgment interest under FAA or pre-judgment interest under Texas Finance Code; trial court did not err by failing to modify arbitrator's award to add pre-judgment interest); *Thomas Petroleum, Inc. v. Morris*, 355 S.W.3d 94, 98–99 (Tex. App.—Houston [1st Dist.] 2011, pet. denied) (trial court lacked authority to modify award by adding pre- or post-judgment interest).

Guzman acknowledges these authorities but urges us to reconsider them. We decline to do so, and we conclude that the trial court lacked authority to award post-judgment interest and correctly declined to award pre-judgment interest. *See Fogal*, 294 S.W.3d at 722; *Thomas Petroleum, Inc.*, 355 S.W.3d at 98–99. Accordingly, we sustain FCI's second issue, overrule Guzman's sole cross-issue, and modify the trial court's judgment to exclude the award of post-judgment interest.

## Conclusion

We modify the trial court's judgment to exclude the award of post-judgment interest and affirm as modified.


Rebeca Huddle
Justice

Panel consists of Justices Jennings, Massengale, and Huddle.