Opinion issued August 26, 2025



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00957-CV

_____

**DARLING HOMES OF TEXAS, LLC AND TAYLOR MORRISON OF TEXAS INC., Appellants**

**V.**

**KURT CARPENTER AND JENNIFER CARPENTER, Appellees**

---

**On Appeal from the 113th District Court**
**Harris County, Texas**
**Trial Court Case No. 2023-37433**

---

## MEMORANDUM OPINION

Appellants Darling Homes of Texas, LLC ("Darling Homes") and Taylor

Morrison of Texas Inc. (collectively, "appellants"), appeal the trial court's order

granting appellees Kurt Carpenter and Jennifer Carpenter's application to confirm

arbitration award by entry of judgment. In one issue, appellants contend that the trial court erred in confirming the arbitrator's final reasoned award.

We affirm.

## Background

On March 25, 2018, the Carpenters and Darling Homes executed a Purchase Agreement for the construction of the Carpenters' residence in Tomball, Texas (the "home"). The Carpenters paid $1,217,696.00 for the home at closing.

### A. Arbitration Agreement

Section 11.2 of the Purchase Agreement contains an agreement to arbitrate. The arbitration agreement provides that "[a]ny and all claims, controversies, breaches or disputes by or between the buyer and seller, arising out of or related to this Purchase Agreement . . . shall be arbitrated pursuant to the Federal Arbitration Act."[1] (Emphasis omitted.) Section 11.2.5 states that "[t]he arbitrator shall be authorized to provide all recognized remedies available in law or in equity for any cause of action that is [the] basis of arbitration." (Emphasis omitted.) Section 11.3, "Texas Residential Construction Liability Act," states that the Purchase Agreement "is subject to Chapter 27 of the Texas Property Code. The provisions of that chapter may affect your right to recover damages arising from a construction defect."

_____

[1] Section 11.2 of the arbitration agreement appears capitalized and in bold in the actual document.

(Emphasis omitted.) And, Section 11.4 states that "[t]he parties agree and understand that, to the extent allowed by law, any damages which Buyer may recover from Seller are strictly limited to the damages allowed under the Texas Residential Construction Liability Act [('RCLA')]."[2] (Emphasis omitted.) The arbitration agreement further states that "the decision of the arbitrator shall be final and binding." (Emphasis omitted.)

The construction of the Carpenters' home was completed in April 2019. The purchase of the home closed on April 11, 2019.

In January 2020, the Carpenters sent a demand letter to Darling Homes under the Texas Deceptive Trade Practices Act ("DTPA") and Texas Business and Commerce Code section 17.41 regarding a claim against Darling Homes, and a notice of construction defects pursuant to the RCLA. The letter stated that in the months following the closing, the Carpenters became concerned about persistent excessive moisture in the soil next to the foundation of the home as well as the growth of algae on the exposed foundation beams. The Carpenters hired an expert, Randy Riddell, P.E., to inspect the property. The letter stated that based on his several site inspections and review of the construction documents, Riddell had concluded that the foundation system of the Carpenters' home "is not stable and is

---

[2] *See* TEX. PROP. CODE ANN. §§ 27.001–.009.

not performing its intended design function, due to a loss of structural integrity, and is in a condition of progressive foundation failure."[3]

Darling Homes responded in writing that Brian Eubanks with Paragon Structural Engineering ("Paragon") had inspected the Carpenters' home and investigated the Carpenters' structural foundation concerns. The findings of the Paragon report were that "the foundation of the subject residence does not exceed the performance standards for overall (global) deflection and/or tilt pursuant to the builder's express limited warranty." The letter continued that the Paragon report found that "the foundation of the subject residence is performing its intended function" and "structural remedial foundation measures are not warranted." The letter further stated that MLA Engineers, which had designed the foundation system of the Carpenters' home, had previously performed a Level B investigation in response to the Carpenters' concerns, and, like Paragon, it found no structural failure.

---

[3] According to Riddell's report, there was no evidence that Darling Homes either provided the appropriate type and volume of fill that would be required for the home or that any of the various layers of fill below the surface (beyond the top six inches) were properly compacted as required by the soil data and site preparation requirements of the Geotech Engineering and Testing Geotechnical Study upon which construction of the Carpenters' home was based.

**B.  Arbitration Proceedings**

The Carpenters filed a demand for arbitration against Darling Homes and its parent company, Taylor Morrison of Texas Inc., with the American Arbitration Association ("AAA"). They asserted causes of action against appellants for violations of the DTPA, fraud in a real estate transaction, common law fraud, breach of contract, negligence, and gross negligence, and they sought recovery of attorney's fees under various statutes and as the prevailing party as provided by the parties' agreement.

Darling Homes answered, asserting general and specific denials and numerous defenses, including that the RCLA controls the Carpenters' claims and their causes of action and that the damages sought by the Carpenters conflict with the RCLA.

The arbitration hearing, which included witness testimony and the admission of evidence, lasted five days. On June 5, 2023, the arbitrator issued a final reasoned award (corrected), which provided, in pertinent part:

> After considering the sworn testimony of the witnesses, the exhibits, the pleadings on file, a site visit, applicable law, the pre- and post-hearing briefs and attorneys' fees affidavits, the Arbitrator finds as follows:
>
> **Breach of Contract**
>
> 1.  [The Carpenters] and [appellants] entered into a Purchase Agreement for the construction and purchase of the Home.

5

2.   The Purchase Agreement, the Specifications[,] and applicable building codes and standards required [appellants] to design and construct the Home in compliance with the applicable Geotech Engineering and Testing ("GET") study for the home.

. . . .

5.   [Darling Homes] failed to follow the GET study by failing to:

  a.  remov[e] vegetation, tree roots, and organics;

  b.  keep[] a record of any on-site fill soils;

  c.  proof-roll[] subgrade areas;

  d.  remov[e] . . . surficial cohesionless sandy soils since they will be unstable underneath slabs;

  e.  place[] and compact[] select structural fill underneath slabs, or perform fly ash stabilization of on-site cohesionless soils used as fill; and

  f.  monitor[] . . . the site preparation and construction by a qualified engineer or technician for quality control.

. . . .

6.   [Appellants'] failure to comply with the GET study is a major construction defect and has caused damage to the Home. The bearing capacity of the uncompacted sand underneath the concrete slab does not meet the requirements of the GET study. The foundation system is not stable and is not performing its intended design function. Conventional underpinning-type foundation-repair techniques would not structurally repair the foundation system.

7.   [The Carpenters] fully performed their contractual obligations and [appellants] materially breached the Purchase Agreement by:

  a)  Failing to construct the Home in substantial conformance with the plans and features list for the Home;

6

b) Failing to construct the Home on fill soil in accordance with the recommendations and inspection of licensed civil and soils engineers; [and]

c) Failing to construct the Home in accordance with the recommendations of geotechnical and structural engineers to meet the requirements of the soils and structural conditions of those local agencies.

8. [The Carpenters] are entitled to damages for breach of contract from [appellants] for the diminution in value of the Home in the amount of $669,500.00.

The arbitrator denied the Carpenters' remaining claims. As to the Carpenters' claim for attorney's fees, the arbitrator found:

The Purchase Agreement between [the Carpenters] and [appellants] has conflicting provisions relating to Attorney's Fees and Costs of Arbitration. Article 11.2.4 of the Purchase Agreement provides that attorney's fees and costs shall be borne separately between the parties. Article 11.4 provides that costs and attorney's fees are recoverable by the prevailing party. In this case, paragraph 11.2.4 is bold, highlighted and titled "Costs and Attorney's Fees" while Article 11.4 is not highlighted and appears later in the agreement under a paragraph titled "Limitation of Claims and Damages - Two Year Period of Limitations." The clear intention under the terms of the Purchase Agreement appear to be highlighted in Article 11.2.4. [The Carpenters'] request for Attorney's Fees and costs against [appellants] is denied.

## C.    Confirmation of Award

Following the issuance of the arbitrator's final reasoned award (corrected), appellants sought to vacate the arbitrator's final award as unenforceable on the ground that the arbitrator exceeded her powers. Specifically, they argued that the award of $669,500.00 for diminution in the value of the Carpenters' home was not a recognized

7

remedy available in law or in equity for the Carpenters' cause of action that was the basis of the arbitration, and the award was unauthorized by the parties' arbitration agreement. They asserted that construction defect claims are governed by the RCLA and the plain language of the statute limits recovery of "the reduction in current market value . . . after the construction defect is repaired if the construction defect is a structural failure."[4] They argued that the defect in this case was neither repaired nor a structural failure.

The Carpenters filed a response to appellants' petition to vacate and an application to confirm arbitration by entry of judgment. In their response, the Carpenters pointed out that the arbitration agreement granted the arbitrator the authority to award damages for all recognized remedies available in law or in equity for any cause of action that was the basis of arbitration. They asserted that the arbitrator considered the parties' agreement and applicable law in reaching her conclusions and, thus, the award drew its essence from the agreement and was rationally inferable from the agreement. They further asserted that the damages awarded to them by the arbitrator were an available remedy under the RCLA. The

---

[4]    *See* TEX. PROP. CODE ANN. § 27.004(g)(4) (providing claimant seeking damages under RCLA "may recover only the following economic damages proximately caused by a construction defect: . . . (5) the reduction in current market value, if any, after the construction defect is repaired if the construction defect is a structural failure").

Carpenters requested that the trial court confirm the arbitrator's final reasoned award (corrected).

On September 25, 2023, the trial court entered its final judgment confirming the arbitration award of $669,500.00 and awarding post-judgment interest. This appeal followed.

## Arbitration Award

In one issue, appellants contend that the trial court erred in confirming the arbitration award because the arbitrator exceeded her powers by acting outside the authority granted to her in the parties' arbitration agreement.

### A. Standard of Review and Governing Law

Arbitration of disputes is strongly favored under both federal and Texas law. *Mitsubishi Motors Corp. v. Soler Chrysler Plymouth, Inc.*, 473 U.S. 614, 631 (1985); *In re Am. Homestar of Lancaster, Inc.*, 50 S.W.3d 480, 484 (Tex. 2001). We review de novo a trial court's decision to confirm or vacate an arbitration award. *Port Arthur Steam Energy LP v. Oxbow Calcining LLC*, 416 S.W.3d 708, 713 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). "Because Texas law favors arbitration, judicial review of an arbitration award is extraordinarily narrow." *E. Tex. Salt Water Disposal Co., Inc. v. Werline*, 307 S.W.3d 267, 271 (Tex. 2010). Therefore, an arbitrator's award "upon matters submitted to [her] is given the same effect as the judgment of a court of last resort. All reasonable presumptions are

indulged in favor of the award, and none against it." *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002).

The Federal Arbitration Act ("FAA") requires a court to confirm an arbitration award unless the award is "vacated, modified, or corrected as prescribed in sections 10 and 11" of the FAA. *Nafta Traders, Inc. v. Quinn*, 339 S.W.3d 84, 91 n.30 (Tex. 2011). Under the FAA, a court may only vacate an arbitration award under four circumstances: (1) where the award was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators, or either of them; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made. *See* 9 U.S.C. § 10(a). Relevant here is the applicability of subsection (4), "which requires vacatur when arbitrators exceed their authority." *Nafta Traders*, 339 S.W.3d at 93.

An arbitrator exceeds her authority when she disregards the contract and dispenses her own idea of justice. *See D.R Horton-Tex., Ltd. v. Bernhard*, 423 S.W.3d 532, 534 (Tex. App.—Houston [14th Dist.] 2014, pet. denied); *Forged Components, Inc. v. Guzman*, 409 S.W.3d 91, 104 (Tex. App.—Houston [1st Dist.]

2013, no pet.); *see also Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 830 (Tex. App.—Dallas 2009, no pet.) ("[I]mprovident, even silly interpretations by arbitrators usually survive judicial challenges." (internal quotations omitted)). That is, "an arbitrator does not exceed her authority by committing a mistake of law, but instead by deciding a matter not properly before her." *LeFoumba v. Legend Classic Homes, Ltd.*, No. 14-08-00243-CV, 2009 WL 3109875, at *3 (Tex. App.—Houston [14th Dist.] Sept. 17, 2009, no pet.) (mem. op.); *see also Vargas v. Rigid Global Buildings, LLC*, 654 S.W.3d 1, 6 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) ("To show that the arbitrator exceeded his powers, it is not enough to show that the arbitrator committed an error, or even a grave error."). "Thus, the appropriate inquiry is not whether the arbitrator decided an issue *correctly*, but instead whether [the arbitrator] had the authority to decide the issue *at all*." *Forest Oil Corp. v. El Rucio Land & Cattle Co.*, 518 S.W.3d 422, 431 (Tex. 2017).

Texas courts employ the "essence test" to determine whether an arbitrator has exceeded her authority. *See Taylor Morrison of Tex., Inc. v. Fulcher*, No. 13-20-00332-CV, 2022 WL 3092553, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 4, 2022, pet. denied) (mem. op.). Under the "essence test," we inquire as to whether the basis for the award is "rationally inferable" from the parties' arbitration agreement. *See id.*; *see also Vargas v. Rigid Global Buildings, LLC*, 654 S.W.3d 1,

11

7 (Tex. App.—Houston [14th Dist.] 2022, pet. denied) ("Arbitrators do not exceed their powers if the arbitration award has a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the arbitration agreement"). In making this inquiry, the reviewing court is not limited to the arbitrator's explanation for the award. *See Vargas*, 654 S.W.3d at 7. Rather, the reviewing court looks to the result reached and determines whether the award, however arrived at, is rationally inferable from the arbitration agreement. *Id.*

**B.  Analysis**

Appellants contend that the arbitrator had no authority to award damages for "diminution in value" to the Carpenters under the Purchase Agreement and applicable law. They argue that, in doing so, she exceeded the authority granted to her under the arbitration agreement, and the trial court should have vacated the award.

The Purchase Agreement permitted the arbitrator to determine the availability and amount of damages. Under section 11.2.5 of the arbitration agreement, "[t]he arbitrator shall be authorized to provide all recognized remedies available in law or in equity for any cause of action that is basis of arbitration." (Emphasis omitted.) Thus, any dispute arising out of the Purchase Agreement—including any dispute regarding what damages, if any, the Carpenters were entitled to recover—was within the arbitrator's broad authority. *See, e.g., Baker Hughes Oilfield Operations, Inc. v.*

12

*Hennig Prod. Co.*, 164 S.W.3d 438, 443 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (noting provision that "parties would arbitrate 'any controversy or claim arising out of or relating to the Agreement or to [Baker Hughes'] services, equipment, or products provided to Customer' was, by its plain language, a broad arbitration provision and subsume[d] *any* controversy or claim arising out of or relating to Baker Hughes' services").

With respect to the Carpenters' breach-of-contract claim, the arbitrator found that the Purchase Agreement, the specifications, and applicable building codes and standards required appellants to design and construct the home in compliance with the GET study for the home. She found that appellants had failed to follow the GET study in numerous ways, and their failure to comply with the study was a "major construction defect" that caused damage to the home. She concluded that "the foundation system is not stable and is not performing its intended design function. Conventional underpinning-type foundation-repair techniques would not structurally repair the foundation system."

Appellants assert that the arbitration agreement limited the arbitrator's authority to award only "recognized remedies available in law or in equity" and identified the specific statute—the RCLA—under which those remedies were to be determined. Appellants assert that the only "diminution in value" remedy that the RCLA allows is the "reduction in current market value, if any, after the construction

defect is repaired if the construction defect is a structural failure." According to appellants, neither requirement was met because the defect was not repaired, and it did not amount to a structural failure.[5] Thus, they assert, the arbitrator disregarded the terms of the parties' agreement and the RCLA to which it referred by awarding damages for "diminution in value" and, in doing so, exceeded her authority.

The record does not support appellants' assertion that the arbitrator disregarded the parties' agreement and the law. In the award, the arbitrator noted that she had been designated to arbitrate the dispute between the parties related to the Purchase Agreement. It is undisputed that the Carpenters' claims arose out of the Purchase Agreement. The award stated that the parties had exchanged pre-suit RCLA/DTPA demands and offers of settlement and that appellants had denied any violations of the RCLA or DTPA. The arbitrator set forth her findings "after considering the sworn testimony of the witnesses, the exhibits, the pleadings on file, a site visit, applicable law, the pre- and post-hearing briefs[,] and attorneys' fees affidavits." The exhibits included the Purchase Agreement which contains the arbitration agreement.

A particular remedy lies beyond the arbitrator's authority "only if there is no rational way to explain the remedy . . . as a logical means of furthering the aims of

---

[5] The RCLA defines "structural failure" as "actual physical damage to the load-bearing portion of a residence caused by a failure of the load-bearing portion." *Id*. § 27.001(7).

14

the contract." *Forest Oil*, 446 S.W.3d at 82. Courts look only at the result. *Id.* "The single question is whether the award, however arrived at, is rationally inferable from the contract." *Id.* (internal quotations omitted). The record demonstrates that the arbitration award is rationally inferable from the language and purpose of the Purchase Agreement. *See Vargas*, 654 S.W.3d at 7 ("Arbitrators do not exceed their powers if the arbitration award has a basis that is at least rationally inferable, if not obviously drawn, from the letter or purpose of the arbitration agreement").

Appellants' argument is essentially that the arbitrator made a mistake in applying the law. We do not decide whether the arbitrator correctly decided the damages the Carpenters were entitled to recover. Judicial review of the arbitration process is limited, and even a mistake of law or fact by the arbitrator in applying substantive law is not a proper ground for vacating an award. *See Forest Oil*, 446 S.W.3d at 83 ("Even if the arbitrator made a mistake in applying the law of remedies or awarded a remedy a court of law could not, that does not support vacatur of the arbitration award on the ground that the arbitrator exceeded her authority."); *see, e.g.*, *Aston Solar, LLC v. Sunnova Energy Corp.*, No. 14-21-00074-CV, 2022 WL 1256427, at *2 (Tex. App.—Houston [14th Dist.] Apr. 28, 2022, no pet.) (mem. op.) (concluding record did not support appellants' contention that arbitrator disregarded agreement's prohibition against consequential damage; at worst, arbitrator made error of law); *Patel v. Moin*, No. 14-15-00851-CV, 2016 WL 4254016, at *5 (Tex.

15

App.—Houston [14th Dist.] Aug. 11, 2016, pet. denied) (mem. op.) (concluding appellants' contentions that arbitrator's award of breach-of-contract damages were not encompassed by parties' arbitration agreement provided no basis for reversing trial court order confirming award "because, at most, they assail the arbitrator's reasoning as being legally erroneous or internally inconsistent" and "[c]ontentions that the arbitrator misinterpreted the contract or misapplied the law provide no basis for disturbing an arbitration award"); *see also Oxford Health Plans, LLC v. Sutter*, 569 U.S. 564, 569 (2013) ("The question for the court is not whether the arbitrator construed the agreement correctly but whether she construed it at all, and if the arbitrator even arguably construed or applied the agreement, the award should not be vacated.").

Appellants' arguments that the arbitrator did not include the phrase "structural failure" in her award and that evidence that a foundation might fail in the future is not evidence of a structural failure are also unavailing. Appellants do not direct us to any authority that an arbitrator must articulate her findings in an award using the precise statutory language. Moreover, Riddell testified that the foundation system of the Carpenters' home "is not stable and is not performing its intended design function, due to a loss of structural integrity, and is in a condition of progressive foundation failure." This evidence arguably suggests that the failure had already begun and would continue. In her award, the arbitrator found that "a major

16

construction defect has caused damage to the Home"; "[t]he bearing capacity of the uncompacted sand underneath the concrete slab does not meet the requirements of the GET study"; [t]he foundation system is not stable and is not performing its intended design function"; and "[c]onventional underpinning-type foundation-repair techniques would not structurally repair the foundation system." Appellants also point to the arbitrator's finding that "there was insufficient evidence that the foundation itself had experienced differential movement (deflected or tilted) in excess of the standard set forth in the warranty." However, even if these findings were inconsistent, this would not provide a basis for vacating the award. *See Patel*, 2016 WL 4254016, at *5 (noting appellants' argument suggesting arbitrator's reasoning was legally erroneous or internally inconsistent did not provide basis for vacatur of award).

We hold that the trial court did not err in confirming the arbitration award. We overrule appellants' sole issue.

## Conclusion

We affirm the trial court's judgment.


Kristin Guiney
Justice

Panel consists of Justices Rivas-Molloy, Guiney, and Morgan.